368 So.2d 1045 (1979)
LOUISIANA STATE BAR ASSOCIATION
v.
J. Daniel RIVETTE.
No. 60906.
Supreme Court of Louisiana.
March 5, 1979.
*1046 Nolan J. Edwards, Edwards, Stefanski & Barousse, Crowley, for defendant-respondent.
Leonard Fuhrer, Alexandria, Roland J. Achee, Shreveport, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, for Louisiana State Bar Association Committee on Professional Responsibility.

DISCIPLINARY PROCEEDING
DIXON, Justice.[*]
The Louisiana State Bar Association charged J. Daniel Rivette with the violation of disciplinary rules in two counts. First, the respondent is charged with receiving money from a client, John V. Ott, commingling and converting the funds to his own use, and failing to account for and repay the funds. Second, respondent is charged with accepting $200.00 from a client, John K. Tice, as a fee, then failing to perform the services for which he had been paid, and failing to account for and repay those funds.
After due proceedings and a hearing before Charles Hanemann, the Commissioner appointed by this court, respondent was found to have violated Disciplinary Rules 1-102(A)(4),[1] 7-101(A)(2)[2] and 9-102(A) and (B).[3] The Commissioner recommended suspension for one year, a reprimand, and restitution to Tice. The Committee on Professional Responsibility made no recommendation. We agree with the Commissioner.
The Ott complaint arose in an unusual way. Rivette had attended law school with Ott's cousin. (Rivette had been admitted to the bar sixteen years before the hearing). In the late fifties or early sixties, when Rivette moved to New Orleans to practice law, he and Ott lived together on Royal Street. Ott and his wife were separated. Rivette later represented Ott in an uncontested divorce proceeding brought by his wife, and in the termination of the community property settlement. Ott was never billed for services, but said he gave Rivette a watch as sort of a fee.
*1047 After the divorce, Ott and his wife made some arrangements about support for Ott's children. Apparently, Ott convinced his wife to reduce the child support payments and permit Ott to put away some money periodically to be used in the future for the educational needs of the children. Rivette did not participate in these arrangements, but agreed that Ott would send him money for this purpose. From April of 1965 to February of 1966 Ott sent twelve checks to Rivette (who was then practicing in Church Point) in amounts ranging from $75.00 to $200.00, totaling $1150.00. At the hearing Ott and Rivette agreed that Ott expected the return of his money on demand, plus interest. Rivette said Ott had given permission to use the money; Ott said he had not considered the matter.
The account in which Rivette deposited Ott's checks was specified as Rivette's "special" account, and was closed October 20, 1967. It was apparently at this time that Ott traveled to Lake Charles with Rivette to visit one of Ott's cousins. Rivette told Ott on this trip that he was leaving the private practice, closing his accounts, and trying to pay his bills. Rivette told Ott that he had no money, but would borrow from a bank to pay Ott. Ott, still a "close personal friend," discouraged Rivette from borrowing the money to make the repayment, saying he did not need the money at that time.
Sometime later, Ott purchased a house, needed the money, and wrote Rivette but did not get a reply. Ott then made an effort to locate Rivette in several places in Louisiana without success. One day while at work as a pharmacist at Schwegmann's, one of Ott's customers showed him a note written on the back of Rivette's business card. With this information, Ott consulted a lawyer who referred him to the Bar Association. On December 14, 1975, ten years after Ott had given the money to Rivette, Ott wrote the Louisiana State Bar Association about his inability to get his money back from Rivette. On April 7, 1977 the Committee notified Rivette of an investigative hearing to be held May 23. After this, Rivette paid Ott the money, plus $500.00 as "interest."
The Commissioner overruled a "plea of prescription" filed by Rivette, found that the funds were received by Rivette in connection with his practice of law and were not only commingled with Rivette's own funds, but were used, and used up, by Rivette. The Commissioner correctly found that "friends and relatives are entitled to the same high standards of integrity from their attorney as are strangers."
The Commissioner considered all the factors submitted to him on behalf of Rivette in mitigation of the offense. The long passage of time influenced his decision, as it does ours. The repayment of the funds is a factor in mitigation but, as found by the Commissioner, should not be given great weight when repayment is accomplished only after the institution of formal charges by the Bar Association. The Commissioner was also impressed by Rivette's intention to limit his future practice to that of a salaried governmental employee who would not have the responsibility for receiving, accounting for, and repaying clients' funds. We agree with the Commissioner's recommendation that Rivette be suspended from the practice of law for one year, and reprimanded for his violation of Disciplinary Rule 9-102.
There is a more serious factual dispute with reference to the second specification against Rivette. John K. Tice, in July, 1976, gave two checks to Rivette. One was for $200.00, the other for $65.00. Tice testified that the $200.00 was to pay Rivette to institute proceedings to obtain the custody of Tice's child from Tice's former wife; the $65.00 was to be for court costs. The $200.00 check was cashed; the $65.00 check never cleared the bank, and no more information was obtained concerning its disposition. Rivette maintained that, while employed as an indigent defender in Orleans Parish, he undertook to represent Tice in a separation suit. Rivette claims that he received two checks for $200.00 from Tice; that the first was in part payment for representing Tice in the separation action, and *1048 the second was also in part payment of the same fee, which Rivette claimed to have been fixed at $500.00.
Tice claims that Rivette had accepted $200.00 as the full fee for representing him in the separation suit, and had accepted the second $200.00 check after the separation, to attempt to gain the custody of Tice's child.
Unfortunately, Rivette kept no books or records which might shed light on the arrangement between him and Tice and never sent Tice a bill. However, Rivette has maintained his version of the arrangement, and has not yet repaid Tice the $200.00.
Because of the many contradictions in the record in Rivette's testimony, the Commissioner accepted Tice's version as more nearly correct. When Tice belatedly discovered that Rivette had failed to institute custody proceedings, he discharged Rivette and sought the return of his money.
We agree with the Commissioner that Rivette's testimony and his business practices entitled him to little credence. When he agreed to institute the proceedings on behalf of the client, he should have done so. If he did not intend to institute the proceedings, he should have made it abundantly clear. If there existed any uncertainty about the fee, it was the lawyer's duty to clarify it.
Although it is to Rivette's credit that he did not spend Tice's $65.00, the admitted existence of that check is more consistent with Tice's version than with Rivette's. If Rivette did not intend to file the rule for custody, there was no reason for Tice to give him a separate check for $65.00 for advance court costs.
We agree with the Commissioner that respondent violated Disciplinary Rule 7-101(A)(2) in that he intentionally failed to perform the services for which his client had paid him.
Therefore, the respondent, J. Daniel Rivette, in addition to the suspension mentioned above, is reprimanded for his violation of Disciplinary Rules 1-102(A)(4) and 7-101(A)(2), and is ordered to return $265.00[4] to John K. Tice.
CALOGERO, J., concurs in part, would prefer to impose a six months suspension.
NOTES
[*] Judge Pike Hall, Jr., Louisiana Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.
[1] "(A) A lawyer shall not:

(4) Engage in [illegal] conduct involving dishonesty, fraud, deceit, or misrepresentation." DR 1-102(A)(4).
[2] "(A) A lawyer shall not intentionally:

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105." DR 7-101(A)(2).
[3] "(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." DR 9-102(A) and (B).
[4] Although the $65.00 check has not cleared the bank, it is still outstanding, and was last in Rivette's hands. Since Rivette did not produce the $65.00 check, Tice is entitled to $200.00 plus $65.00.