368 So.2d 694 (1979)
LOUISIANA STATE BAR ASSOCIATION
v.
James T. ADAMS.
No. 61252.
Supreme Court of Louisiana.
March 5, 1979.
*695 C. P. Brocato, Shreveport, for defendant-respondent.
Leonard Fuhrer, Alexandria, Wood Brown III, New Orleans, Sam J. D'Amico, Baton Rouge, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, for Louisiana State Bar Ass'n Committee on Professional Responsibility.

DISCIPLINARY PROCEEDINGS
CALOGERO, Justice.[*]
The Louisiana State Bar Association through its Committee on Professional Responsibility has petitioned this Court seeking disciplinary action against James T. Adams, a Shreveport attorney, who was admitted to the practice of law in Louisiana in 1948. The petition was preceded by a formal investigatory hearing in the office of the Committee, motion to appoint and appointment by this Court of a Commissioner, and a hearing before and a formal report by the Commissioner.
The Commissioner by very thoughtful and competent analysis of the evidence and findings of fact concluded that respondent attorney had violated four provisions of Disciplinary Rule 1-102 of the Code of Professional Responsibility.[1] (R.S. 37: Chap. 4-App., Art. 16, Canon 1, DR1-102). Because of several mitigating factors, each borne out by the record, the Commissioner recommended that respondent be reprimanded rather than disbarred or suspended from the practice of law. The Committee in its petition and brief in this Court suggests that at least some stated period of suspension would be in order.
We conclude that relator's proven conduct coupled with uncontested mitigating factors, particularly evidence of relator's good character, warrant that relator be suspended from the practice of law for a period of one year from this date.
Most of relator's time since the year 1971, when he formed the James Taylor Adams Company has been spent in the real estate business. Because he is an attorney he has apparently handled legal matters in conjunction with his real estate business, as he did in the transaction which gave rise to these proceedings.
At some time prior to March 8, 1976, one Richard Allen Delisle listed his home for sale with James Taylor Adams Company. When later a purchaser was found by another real estate agent, Mr. Delisle's home was sold in a sales transaction on March 8, 1976 in which Mr. Adams served as closing attorney. At that time, as closing attorney, Mr. Adams received from the vendee in cash and proceeds of a mortgage loan extended *696 to the vendee $66,326.61.[2] Of these proceeds $38,870.86 was to be used to pay off the vendor's first mortgage to Home Federal Savings and Loan Association. Mr. Adams did not pay off that loan until July 29, 1976. In the interim he put at least $25,000 of those proceeds, if not all of the $38,870.86, to his own use. Likewise in the interim between March 8, 1976 and July 29, 1976 Mr. Adams made the prescribed monthly payments on the vendor's mortgage to Home Federal Savings and Loan Association.
There was not sufficient evidence, and the Commissioner so found, to establish that Mr. Adams intended during this time to permanently deprive anyone of the mortgage pay out money. Nevertheless, he did not immediately pay off the mortgage, nor did he pay it off shortly following a telephone call from Mr. Delisle some thirty days after the sale. Rather he did so on the same date that Mr. Delisle, on July 28, 1976, sent a complaining letter to Mr. Adams with acknowledged carbon copies to the vice-president of Home Federal Savings and Loan Association, the purchaser of the home, and the Board of Realtors. This payment took place before Mr. Delisle complained to the Shreveport Bar Association.
The Commissioner concluded and we accept as true that Mr. Adams' pay out check of July 28th, credited on the mortgage holder's books July 29th, was sent coincidentally on the same date that Mr. Delisle complained to the real estate board, and not in response to such complaint. There is no question but that respondent misused his client's funds, nor is there any question but that misuse of a client's funds by an attorney represents a grave form of professional misconduct. Louisiana State Bar Association v. Selenberg, 270 So.2d 848 (La.1972); Louisiana State Bar Association v. Van Buskirk, 249 La. 781, 191 So.2d 497 (1966).
The question, however, of the extent of disciplinary action which should be imposed is affected in this case by numerous mitigating factors. As the Commissioner noted respondent repaid the money before a complaint was filed with the Shreveport Bar Association and probably before receipt of the client's letter of complaint acknowledged copy of which was sent to the Board of Realtors; he never intended to appropriate the money permanently; he voluntarily suspended himself from the practice of law shortly after this experience some two years ago; and he expressed his intent not to practice law in the future. Equally as significant as these mitigating factors, and perhaps even more so, is the evidence of respondent's good character, which was uncontested by counsel for the Bar Association. Respondent presented testimony and/or affidavits by stipulation, of eleven persons relative to his good character, all substantial citizens of the City of Shreveport. The quality of the character evidence prompted the following remarks by counsel for the Committee in the hearing before the Commissioner. "I cannot help but be impressed with the character witnesses that have come forth to speak in behalf of Mr. Adams . . . I think his reputation in this community is a fine one and does credit to the profession." The Commissioner concluded that Mr. Adams has enjoyed and still enjoys an excellent reputation for honesty and integrity in Shreveport.

Decree
For the foregoing reasons we find that respondent James T. Adams has seriously violated Disciplinary Rule 1-102 specifically by misusing his client's funds, and he is therefore suspended from the practice of law for one year from this date.
RESPONDENT SUSPENDED FROM PRACTICE OF LAW FOR ONE YEAR FROM THIS DATE.
NOTES
[*] Judge James C. Gulotta, Louisiana Court of Appeal, Fourth Circuit, participated in this decision as an Associate Justice Ad Hoc.
[1] The full pertinent provisions of Disciplinary Rule 1-102 are as follows:

"(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
. . . . . .
(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
[2] He apparently earned a real estate commission of $3900.00 and charged $75.00 legal fee for passing the act of sale.