447 So.2d 464 (1984)
LOUISIANA STATE BAR ASSOCIATION
v.
H. Book HOPKINS.
No. 82-B-1362.
Supreme Court of Louisiana.
February 27, 1984.
Rehearing Denied April 13, 1984.[*]
Thomas O. Collins, Jr., Wood Brown, III, New Orleans, Robert J. Boudreaux, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Natchitoches, for relator.
Emile A. Carmouche, Gretna, for respondent.

DISCIPLINARY PROCEEDING
DENNIS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, brought this disciplinary proceeding against one of its members, H. Book Hopkins. We conclude that Mr. Hopkins violated the Code of Professional Responsibility by failing to maintain an accurate accounting of a client's settlement funds, by failing to promptly pay or deliver the client's portion of the settlement and, lastly, by commingling and converting these funds to his own use.
A client of the respondent addressed a letter of complaint dated July 10, 1980 to the Bar Association. The client, who had hired respondent to represent her in asserting a claim for personal injury, asserted that on May 8, 1980 she received from respondent a check in the amount of $1517.01 as her share of funds received in settlement of her claim. But when the check was deposited it was returned unpaid due to insufficient funds in the attorney's account. The client further alleged that despite her efforts, which included a number of phone conversations and threats to bring the matter to the attention of the Bar *465 Association, respondent had not paid her as of the date of her letter. Based upon this complaint the Committee on Professional Responsibility conducted a preliminary investigation, concluding that a formal investigatory hearing was warranted.
Thereafter, on June 2, 1982, petitioner instituted in this Court a proceeding to disbar or otherwise discipline the respondent for alleged professional misconduct. A commissioner was appointed pursuant to the provisions of Article XV, Section 6 of the Articles of Incorporation of the Louisiana State Bar Association (1971), approved through a rule of this Court. A hearing was held before the Commissioner on February 8, 1983. Based upon the evidence adduced at this hearing the Commissioner concluded that respondent had violated Disciplinary Rules 1-102(A)(1) and 9-102(B) (failure to maintain proper accounting and failure to promptly pay or deliver the client's portion of a settlement) but not 9-102(A) (commingling and conversion of a client's funds) and recommended that respondent be reprimanded. The Committee thereafter filed a concurrence and opposition to the Commissioner's report, through which it opposed the Commissioner's conclusion that there was no evidence of intent to convert the client's funds and his recommendation as to discipline, and then, by motion, placed this matter on the docket of this Court for oral argument. Respondent failed to formally except to the Commissioner's findings and conclusions and admitted both in brief and at oral argument that he had acted in violation of Disciplinary Rule 9-102(B). Respondent, however, strenuously denied the accusation that he commingled and converted his client's money.
The record before us establishes that in 1980 respondent was employed by the client to prosecute her claim for personal injury which subsequently was compromised and settled. In furtherance of settlement, respondent received a draft issued by State Farm Insurance Company in the amount of $2,528.35, payable to the respondent and his client. The draft was paid on April 19, 1980 and on April 21, 1980 the respondent's "Office Account" was credited in the amount of $2,528.35. On May 8, 1980, the respondent issued a check drawn on his "Client Escrow Account" to the client in the amount of $1517.01, the amount due the client from the settlement. The client's check was returned bearing an "NSF" designation on May 21, 1980. The client discussed the matter with respondent on several occasions and received promises of payment but no money. On the second or third of July the client talked with respondent and warned him that she would contact the Bar Association on the tenth of the month if she had not received payment. The client contacted the bar association, as promised, through a letter dated July 10, 1980 and received a mailgram from respondent, dated July 11, 1980, promising payment no later than July 21, 1980. Respondent was contacted by the Committee on Professional Responsibility on July 21, 1980 and full payment was received by the client between August 1, 1980 and August 18, 1980.
There is no evidence that respondent used his client escrow account for purposes other than preserving the identity of money due clients. We conclude, therefore, that respondent did not violate D.R. 9-102 in this respect.
The record does establish, however, that respondent commingled and converted to his own use the money he received on behalf of his client and that disciplinary sanction should be imposed.
In April of 1980 respondent deposited his client's share of the settlement funds into his office account, the bank account in which respondent kept his own money. The client's money and respondent's money, therefore, were commingled in the office account. During the summer of 1980 respondent withdrew from his office account some, if not all, of the client's money and spent it for his own purposes. This conversion of the client's funds is evidenced by the fact that respondent's office account was overdrawn on a number of occasions after deposit of the settlement of *466 funds therein and rarely had a balance that exceeded the amount due the client.
The purpose of lawyer disciplinary proceedings is to maintain appropriate standards of professional conduct in order to protect the public and the administration of justice from lawyers who have demonstrated through their conduct that they are unable or likely to be unable to discharge their professional duties. LSBA v. O'Halloran, 412 So.2d 523 (La.1982); LSBA v. Heymann, 405 So.2d 826 (La.1981); LSBA v. Quaid, 368 So.2d 1043 (La.1979). The discipline to be imposed in a particular case will depend upon the seriousness and circumstances of the offense, fashioned in light of the purpose of lawyer discipline, taking into account aggravating and mitigating circumstances. LSBA v. O'Halloran, supra; LSBA v. Bensabat, 378 So.2d 380 (La.1979); see ABA Joint Committee on Professional Discipline, Standards for Lawyer Discipline and Disability Proceedings, § 7.1 p. 44 (1979).
Applying these precepts, we conclude that a one-year suspension from the practice of law is warranted.
Respondent argues that the delay in payment was caused by an inefficient office staff and by the fact that he was out of town on a regular basis during the summer of 1980 and unable to attend to the details of his practice. Respondent argues further that the fact that he paid his client in full nine days after being notified of her complaint by the Bar Association and fully cooperated with the Committee during the investigation of the matter should weigh in his favor.
We have considered respondent's arguments and the fact that this is the first disciplinary action taken against respondent who was admitted to practice in Louisiana in 1970, but conclude that the mitigating factors do not obviate the need for disciplinary action. Regardless of the cause of the issuance of the worthless check, the fact remains that respondent learned on May 21, 1980 that his client had not been paid and failed to rectify the situation, despite numerous demands by the client, until after he was contacted by the Bar Association on August 21, 1980. Professional irresponsibility is also evidenced by the fact that the funds respondent should have delivered to his client were commingled with his own and converted to his own use. Given the serious nature of respondent's misconduct, we believe that a reprimand is inappropriate in this case and that respondent should be suspended from the practice of law for one year. We have given due consideration and weight to the respondent's eventual payment of the sum due his client. In the absence of this important mitigating factor, respondent's case would warrant a more severe sanction.

Decree
It is ordered, adjudged and decreed that H. Book Hopkins, respondent, is suspended from the practice of law in this state for a period of one year, and that all costs of these proceedings be paid by respondent.
NOTES
[*] WATSON, J., would grant a rehearing.