471 So.2d 685 (1985)
LOUISIANA STATE BAR ASSOCIATION
v.
Stephen R. PEREZ.
No. 83-B-1836.
Supreme Court of Louisiana.
June 17, 1985.
Thomas O. Collins, Jr., Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Jr., Natchitoches, for relator.
Anthony J. Russo, New Orleans, for respondent.

DISCIPLINARY PROCEEDING
DIXON, Chief Justice.
In this disciplinary proceeding Stephen R. Perez is accused of commingling and converting to his own use client funds entrusted to him for the purpose of obtaining the partial cancellation of mortgages. The evidence is clear and convincing. However, in light of the evidence presented in mitigation, an eighteen month suspension from the practice of law will adequately protect the public.
Respondent was retained by Frank Marengo to pass acts of sale on two parcels of land in St. Tammany Parish. Mr. and Mrs. Marengo were the purchasers of the two lots which were being sold by Mr. and Mrs. Frank Sinopoli, Jr. In connection with the act of sale, Perez was to secure the partial release of mortgages existing on the two lots.
The acts of sale were passed by Mr. Perez on June 30, 1981. The parcels, Lots 19A and 21A of the Witteborg Farms Subdivision of St. Tammany Parish, sold for $34,100 and $15,500, respectively. Frank Marengo executed checks of $2500 and $16,170 in favor of Frank A. Sinopoli, Jr. and Stephen R. Perez. The $2500 paid to Sinopoli represented the cash down payment for the property. The funds received by Perez, $16,170, were to be applied toward the costs of the sale and the partial release of mortgages existing on the property. These mortgages were held by South Savings and Loan Association and First Bank of Slidell, both located in St. Tammany Parish.
On July 1, 1981 respondent deposited the $16,170 check into his personal checking account at First National Bank of St. Bernard Parish. Perez did not maintain a separate clients' account. Subsequent to the deposit of Marengo's funds, the account balance was reduced below zero on several occasions as respondent applied the funds toward miscellaneous business and personal *686 uses. In August, 1981 Perez closed his account with First National Bank of St. Bernard Parish and opened a new checking account at St. Bernard Bank and Trust Company.
During the three months following the act of sale, Perez did not apply any funds toward obtaining the releases. He recorded the acts of sale on August 20, 1981. Mr. Marengo contacted respondent on several occasions to inquire whether the releases had been obtained. On October 1, 1981 Marengo retained another attorney, Alvin Perry, to obtain the partial releases. Also on October 1 Marengo spoke with Perez but did not mention that he had retained new counsel. On October 2 Perez deposited $25,000 into his checking account. On that same day Perez was contacted by Perry who advised Perez that he had been retained by Marengo to obtain the releases.
On October 23 and 30 Perez delivered checks of $12,000 and $2500 to South Savings and Loan Association and First Bank of Slidell, in payment of the amounts necessary to secure the releases. The actual releases could not be obtained at that time due to delays associated with the complicated nature of the partial cancellations.
Perez was informed by Perry of Mr. Marengo's intention to seek damages and attorney's fees for losses attributable to Perez' delay in obtaining the releases. On November 16, 1981 Perez and Perry tentatively agreed that Marengo would settle his civil claims against Perez for $5000 in damages plus $960 in attorney's fees. The actual settlement was delayed due to difficulties encountered by Perry in securing the releases from the Slidell banks. The releases finally were obtained and recorded by Perry on February 22, 1982. On January 27, 1982 Perez paid $6030 in damages and attorney's fees to Marengo in exchange for a compromise of all civil actions available to Marengo.
The Committee on Professional Responsibility first contacted Perez by correspondence dated November 10, 1981. The correspondence referred to two letters of complaint, dated October 12 and October 15, 1981, from Frank Marengo. On April 15, 1983 the committee notified respondent of three specifications of misconduct.[1] In these specifications, the committee alleged that respondent was in violation of Disciplinary Rules 1-102 and 6-101(A)(3) for neglecting to obtain the partial releases, and for commingling and conversion of client funds.
*687 A formal investigatory hearing was conducted on May 10, 1983. The committee filed a petition with this court, requesting that disciplinary action be taken against respondent. A commissioner was appointed and a hearing was held on January 12, 1984. Mr. Perez and three character witnesses testified at the hearing. After considering the testimony of the witnesses and the record of prior proceedings, the commissioner concluded that the committee proved violations of Disciplinary Rules 1-102, 6-101(A)(3), and 9-102 by clear and convincing evidence. The commissioner concluded his report with a recommendation that respondent be suspended from the practice of law for six months.
The committee opposes the commissioner's report insofar as he recommends a six month suspension from the practice of law. The committee argues that a more severe penalty is warranted in light of the seriousness of respondent's misconduct.
Respondent admits that he commingled client funds with his personal funds. He denies all other allegations of negligence or wrongdoing. Specifically, he contends that although he did commingle Marengo's funds with his own funds, he did not convert those funds to his own use.
Perez maintains that a conversion did not take place since he always maintained sufficient funds to pay for the releases in a "strong box" with Perez' personal friend, Thomas Creighton. Perez maintains that it was his practice to keep a minimum amount of cash in his bank account and deposit the remainder in the "Creighton account." He claims that he followed this procedure in an attempt to ward off any seizures of his bank account by his ex-wife. The record does contain some evidence that his ex-wife seized his bank records during divorce proceedings in 1978.
The only tangible evidence of Perez' account with Creighton was a brief list of deposits and withdrawals maintained by Creighton. Perez maintains that he kept no record of his own.
The committee contends that the "Creighton account" never existed and the accounting sheet was fraudulently concocted prior to the hearings. In his report, the commissioner concluded that the committee failed to prove that the "Creighton account" was a fraud. We concur with this finding of the commissioner, especially in view of the fact that the original accounting sheet is missing from the record.[2]

NEGLECT OF A LEGAL MATTER
The committee contends that respondent violated Disciplinary Rules 1-102 and 6-101(A)(3) by neglecting to obtain the partial releases after receiving his fee and funds from his client. DR 1-102 provides:
"(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
DR 6-101(A)(3) provides:
"A lawyer shall not:
. . . . .
(3) Neglect a legal matter entrusted to him."
Respondent performed the acts of sale on June 30, 1981. On October 1, 1981, three months later, Mr. Marengo was forced to retain new counsel to obtain the releases which respondent failed to secure. Respondent claims that he phoned the Slidell banks on several occasions prior to October, 1981, but his calls were not returned. He did not produce any records of these calls nor any other evidence that he made the calls. Furthermore, he did not *688 send any correspondence to the banks nor did he attempt to meet with any of the bank employees prior to October.
Although respondent's dilatory approach is not excusable, it is noteworthy that Mr. Marengo's second counsel, Alvin Perry, also experienced difficulty in obtaining the releases.[3] Perry was retained on October 1, 1981 and the releases could not be obtained and recorded until February 22, 1982. This delay ensued in spite of Perez' payment of the necessary funds to the banks on October 23 and 30, 1981.
In Louisiana State Bar Association v. Martin, 451 So.2d 561 (La.1984), the attorney neglected six distinct legal matters, each involving the recordation of acts of sale and mortgages. Martin failed to show any mitigating evidence and there was evidence that he had received six prior reprimands from the bar association for prior misconduct of the same nature.
Respondent's neglect in obtaining the releases was violative of DR 6-101(A)(3). However, his conduct in this regard was much less culpable than the pattern of neglect present in Martin. Martin is further distinguished from this case by the absence of prior discipline against respondent. In light of the foregoing, respondent is reprimanded for this aspect of his alleged misconduct.

COMMINGLING AND CONVERSION
The committee accuses respondent of receiving $15,500[4] in client funds, commingling those funds with his personal funds, and converting those funds to his own use. DR 9-102 provides:
"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."
Respondent admits that he failed to maintain a clients' account and that he commingled Marengo's funds with his own. However, he contends that he did not convert those funds since he maintained sufficient cash funds in the "Creighton account" to pay for the releases at any time. The commissioner concluded that respondent commingled and converted the funds *689 to his own use. Likewise, we conclude that respondent converted the funds.
The existence of the "Creighton account" does not exculpate respondent from the conversion charge, since he failed to keep any records of his own regarding the funds in that account. Marengo was never aware that Perez maintained funds with Creighton and he did not consent for his funds to be deposited in that account. If Perez had met his demise prior to obtaining the releases, Marengo would have been left without recourse for the recovery of his funds, regardless of whether Perez maintained sufficient funds with Creighton.
After the deposit of Marengo's funds in respondent's personal checking account, the balance in that account was reduced as respondent drew checks for various business and personal expenses. An examination of Perez' bank statements reveals that his account went into overdraft status on several occasions after the deposit of Marengo's funds. Regardless of the existence of credits with his friend Creighton, Perez used his client's money. The funds were converted to respondent's use.
The misuse of client funds has repeatedly been characterized as one of the gravest and most reprehensible forms of attorney misconduct. Louisiana State Bar Association v. Daye, 443 So.2d 1107 (La.1983); Louisiana State Bar Association v. Armagnac, 424 So.2d 996 (La.1982); Louisiana State Bar Association v. Selenberg, 270 So.2d 848 (La.1972); Louisiana State Bar Association v. Van Buskirk, 249 La. La. 781, 191 So.2d 497 (1966).
Although disbarment is often warranted in such cases, we have refrained from applying this extreme remedy where the misconduct is offset by mitigating factors. Louisiana State Bar Association v. Hopkins, 447 So.2d 464 (La.1984); Louisiana State Bar Association v. Rivette, 368 So.2d 1045 (La.1979); Louisiana State Bar Association v. Adams, 368 So.2d 694 (La. 1979). Restitution through the repayment of converted funds has been recognized as a mitigating factor, especially where it is accomplished prior to the commencement of a formal investigation by the bar association. Louisiana State Bar Association v. Rivette, supra; Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La.1975). Uncontested evidence of an attorney's good character and reputation in the community will also be considered as mitigating evidence. Louisiana State Bar Association v. Adams, supra. Finally, the absence of prior misconduct and the isolated nature of the charged misconduct will be considered in determining whether a less severe form of discipline is appropriate in a given case. Louisiana State Bar Association v. Daye, 427 So.2d 840 (La.1983).
Restitution of the converted funds was completed on October 23 and 30 when Perez delivered the funds to the Slidell banks. The transfer of Marengo's funds to the Slidell banks was accomplished prior to any notice from the bar association, but after letters of complaint from Marengo. In addition to restitution of the converted funds, respondent paid Marengo $6030 in damages and attorney fees.
At the commissioner's hearing character witnesses offered uncontested testimony concerning respondent's good character. Three judges from St. Bernard Parish testified that respondent enjoys a fine reputation in the St. Bernard community. Furthermore, they attested to respondent's dignified and professional conduct while practicing before their tribunals.
Respondent has been practicing law for the past twenty-three years. He has been the subject of four prior complaints to the bar association. None of those complaints warranted disciplinary action by the committee.
In consideration of the mitigating evidence, the extreme remedy of disbarment is not appropriate in this case. The commissioner recommended that respondent be suspended from the practice of law for six months. Such discipline would fail to reflect the gravity of respondent's misconduct. Instead, an eighteen month suspension from the practice of law is appropriate.
*690 For the foregoing reasons, it is ordered, adjudged and decreed that, in addition to the reprimand referred to above, Stephen R. Perez be suspended from the practice of law for eighteen months from the date of the finality of this judgment, at respondent's cost.
CALOGERO and MARCUS, JJ., concur in the majority's findings, but dissent as regards the discipline imposed. A six month suspension from the practice of law, as recommended by the Commission, rather than the eighteen months suspension imposed by the majority, is more appropriate.
LEMMON, J., dissents, believing that the six-month suspension recommended by the Commission is adequate discipline, since respondent either had the funds or the immediate ability to produce the funds that he failed to segregate.
NOTES
[1] SPECIFICATION NO. 1COMMITTEE FILE NO. 6652

In connection with the above-referenced Committee file, it has been alleged:
In June of 1981, you were retained to pass two acts of sale on behalf of Frank A. Marengo. You received a fee for said services and, despite payment of said fee and continued requests from your client, you failed, refused and neglected to complete all legal work relating to said acts, causing injury and damage to your client; all in violation of Disciplinary Rule 1-102 and 6-101(A)(3) of the Canons of Professional Responsibility for the Louisiana State Bar Association.
SPECIFICATION NO. 2COMMITTEE FILE NO. 6652
In connection with the above-referenced Committee file, it has been further alleged:
In connection with the act of sale, as set forth above, you were paid the sum of $15,500.00 by your client to pay to the seller's homestead, South Savings of Slidell, Louisiana, to obtain a partial release of the seller's first mortgage, held by the aforesaid Savings institution. Despite payment of said sum, you, on June 30, 1981, failed, refused and neglected to pay said sum in the amount of $15,500.00, to cancel said mortgage on your client's property until December of 1981. Further, your client was compelled to obtain the services of another attorney to force you to pay said monies to the homestead in question; all in violation of Disciplinary Rule 1-102 and 6-101(A)(3) of the Canons of Professional Responsibility for the Louisiana State Bar Association.
SPECIFICATION NO. 3COMMITTEE FILE NO. 6652
In connection with the above-referenced Committee file, it has been further alleged:
That, as evidence (sic) by your receipt of the sum of $15,500.00, on June 30, 1981, as set forth in Specification number 2 above, and your deposit of said sum to your account and your continued refusal to pay said sum to the rightful owners, thereof, you did commingle and convert said sum of $15,500.00 to your own use; all in violation of Disciplinary Rule 1-102 and 6-101(A)(3) of the Canons of Professional Responsibility for the Louisiana State Bar Association.
[2] The committee, in its Concurrence and Opposition to the Report of the Commissioner, states that the original record of the case is missing, after having been checked out to the commissioner.
[3] At the committee's formal investigatory hearing, Perry testified that he had experienced difficulty in obtaining the releases. Perry stated that he attempted to contact the Slidell attorney, who represented the banks, over six times regarding the releases and his calls were not returned. On December 30, 1981 he wrote a letter to the banks' attorney, detailing the frustration he had experienced and asking that the matter be handled as soon as possible.
[4] Although the committee accuses respondent of failing to disburse $15,500, it appears from our review of the record that he failed to disburse $14,500.