DIXON, Chief Justice.
In this disciplinary proceeding Wilmer G. Hinrichs is accused of commingling and converting to his own use client funds from the settlement of the client’s case. The evidence is clear and convincing. However, in the light of defendant’s full restitution and payment of damages, a twenty-four month suspension from the practice of law will adequately protect the public.
Hinrichs was retained by Griffin A. Revere to represent him in a worker’s compensation claim. The claim was settled in the amount of $14,185 on October 26, 1982. On October 29, 1982 the court in St. Charles Parish approved the settlement. A check for the full amount was issued by Employer’s National Insurance Company. This draft was deposited by Hinrichs into his trust account at the Whitney National Bank on October 29, 1982. On the same day, Hinrichs issued a check drawn on his trust account in favor of Griffin Revere in the amount of $11,200, which was Revere’s portion of the settlement. This check was returned because of insufficient funds in the account.
Before deposit of the settlement funds, the trust account contained $64.79. This amount was taken by an Internal Revenue Service levy prior to deposit of the settlement check. In September, 1982 Hinrichs had issued a check drawn on the trust account in the amount'of $6716.68 in payment of a personal debt. This check had been postdated October 22, 1982. The *750 postdated check cleared the day the settlement funds were deposited. Thus there remained insufficient funds to cover the check in favor of Revere.
In November, 1982 Hinrichs paid $2200 to Revere toward covering the $11,200 owed. Revere made several unsuccessful attempts to collect the remaining amount from Hinrichs. In January, 1983 Revere retained an attorney, Jacques P. Bezou, to assist him in collecting the money owed. Bezou made demand on Hinrichs for full payment on February 3, 1983. On February 18, 1983 Bezou filed suit against Hin-richs in civil district court. On the same date, Bezou filed complaints regarding Hin-richs’ conduct to the District Attorney of St. Charles Parish and to the Louisiana State Bar Association.
On March 18, 1983 Hinrichs sent $4000 to Bezou for payment to Revere. On May 19, 1983 Hinrichs sent an additional $1000 and on June 3, 1983 an additional $3000. Hinrichs completed payment of the full $11,200 before the date of trial in civil district court.
Revere suffered injury because of the delay in payment by Hinrichs, due to Revere’s personal financial difficulties. On the date of trial, June 29, 1983, the parties agreed to a compromise of damages in the amount of $3500 to be paid by Hinrichs to Revere by August 1, 1983. Hinrichs further waived his right to quantum meruit recovery for other services performed for Revere. Hinrichs paid the $3500 in damages in August, 1983.
The Louisiana State Bar Association’s Committee on Professional Responsibility issued a letter of specification on October 20, 1983 to Hinrichs, alleging three specifications of misconduct. A formal investigatory hearing was held on December 8, 1983, at which the respondent appeared and represented himself.
After reviewing the evidence adduced at the hearing, the committee, by unanimous vote, found that respondent was guilty of all three specifications of misconduct. A petition was filed with the court on July 13, 1984. Respondent was served on August 9, 1984. No answer was filed and on October 10, 1984 the Louisiana State Bar Association filed a motion to appoint a commissioner. This motion was granted on October 25, 1984 and Leon J. Reymond, Jr. was appointed commissioner.
Commissioner’s hearings were held on December 19, 1984, January 24, 1985 and January 29, 1985. The report of the commissioner was submitted on March 22, 1985.This report found that the committee had proved the facts as set forth in the three specifications of misconduct, and these were sufficient to prove violations of Disciplinary Rules 1-102 and 9-102. It did not find that the committee had proved a violation of Disciplinary Rule 6-101(A)(3) as alleged in specification number three. Because he found the violations of sufficient gravity, the commissioner recommended the suspension of respondent’s license to practice law for twenty-four months. The commissioner did not, however, find intent on the part of respondent to deprive his client of the funds permanently.
On April 1, 1985 the Louisiana State Bar Association filed its concurrence with the committee’s findings of fact and conclusions of law, and its opposition to the commissioner’s recommendation of a two year suspension, recommending instead a three year suspension.
The committee accused the respondent of receiving $11,200 in client funds, commingling those funds with his personal funds, and converting those funds to his own use.
Disciplinary Rule 1-102 provides:
“(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
*751 (6) Engage in any other conduct that adversely reflects on his fitness to practice law.”
Disciplinary Rule 9-102 provides:
“(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.”
The commissioner concluded that respondent commingled and converted his client’s funds to his own use. His conclusions are supported by the record. The evidence shows that respondent deposited the settlement check into his trust account and wrote his client a check for $11,200, the client’s portion, which was not honored by the bank and was returned for insufficient funds. It was nearly eight months before the full amount was repaid to the client.
Misuse of client funds has repeatedly been characterized as a very serious and reprehensible form of attorney misconduct. Louisiana State Bar Association v. Perez, 471 So.2d 685 (La.1985); Louisiana State Bar Association v. Daye, 443 So.2d 1107 (La.1983); Louisiana State Bar Association v. Armagnac, 424 So.2d 996 (La.1982); Louisiana State Bar Association v. Selenberg, 270 So.2d 848 (La.1972).
Although in such eases long-term suspension or disbarment can be warranted, we have refrained from applying the most extreme remedies when the misconduct is offset by mitigating factors. Louisiana State Bar Association v. Perez, supra; Louisiana State Bar Association v. Hopkins, 447 So.2d 464 (La.1984); Louisiana State Bar Association v. Rivette, 368 So.2d 1045 (La.1979); Louisiana State Bar Association v. Adams, 368 So.2d 694 (La.1979). Restitution through the repayment of converted funds has been recognized as a mitigating factor, especially when it is accomplished prior to the commencement of formal investigatory proceedings by the bar association. Louisiana State Bar Association v. Perez, supra; Louisiana State Bar Association v. Rivette, supra; Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La.1975). In this case, respondent had completed full restitution in June, 1983, and paid $3500 in damages to his client by August, 1983. The first action of the Louisiana State Bar Association Committee on Professional Responsibility was in October, 1983 and its formal investigatory hearing was in December, 1983.
Respondent has been practicing law for thirty-two years. He has been the subject of at least sixteen prior complaints to the bar association. Some of these were dismissed; four others resulted in private or *752 public reprimands. None involved allegations of commingling or conversion of client funds.
In the light of the gravity of respondent’s offense and of his mitigating conduct, the commissioner recommended that he be suspended for twenty-four months. This penalty is appropriate.
Therefore, it is ordered, adjudged and decreed that Wilmer G. Hinrichs be suspended from the practice of law for twenty-four months from the date of the finality of this judgment, at respondent’s cost.