ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
This attorney disciplinary proceeding arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Eric R. Bissel, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS
The underlying facts are not in dispute. In 1993, the heirs of Gladys O. Syrdal retained respondent in connection with proceedings involving Mrs. Syrdal’s estate. Because respondent’s clients resided outside Louisiana, respondent was an authorized signatory on a checking account maintained in the name of the estate at a local bank. Over a two-year period beginning in April 1994, respondent, without the knowledge of his clients, wrote numerous checks on this account for his own use, eventually totaling $28,180.
In April 1996, respondent confessed his misconduct to his clients. By that time, respondent had reimbursed $26,575 of the funds he had taken from the account.[1]
| ¡¿DISCIPLINARY PROCEEDINGS
In August 1996, respondent’s clients filed a complaint with the ODC. At a meeting in February 1997, respondent and his counsel discussed consent discipline with the ODC, and respondent made a proposal of discipline to the ODC in March 1997. The ODC acknowledged respondent’s submission in writing and informed him that a response would be forthcoming after the matter was reviewed. However, respondent heard nothing further from the ODC until some eighteen months later, when his proposal for consent discipline was rejected in October 1998.[2]
In December 1998, the ODC instituted formal charges against respondent, alleg- *851 mg that he violated Rule 1.15(a) (safekeeping property of a client or third person) of the Rules of Professional Conduct. Respondent answered the formal charges and admitted the misconduct. Accordingly, when the matter was presented for formal hearing before a hearing committee, the sole issue to be determined was the appropriate sanction for respondent’s misconduct.

Hearing Committee Report

At the formal hearing before the committee, the ODC called no witnesses, but introduced numerous exhibits, including copies of the checks drawn by respondent against the estate’s account and copies of the checks written by respondent to reimburse the estate’s account.
Respondent testified before the committee on his own behalf. He stated that between 1994 and 1996, he faced financial problems stemming from his earlier divorce and bankruptcy, and desperately needed money to pay taxes, office expenses, |schild support, and his mortgage note. Respondent testified that as a result of his financial difficulties, he used the estate’s ■ checking account as a “line of credit.” However, he stated that he never intended to keep the money he took, and pointed out that he restored all of the converted funds before his clients discovered what he had done.
Respondent also called two character witnesses, both of whom testified to respondent’s active civic involvement[3] and his outstanding reputation in the community.
At the conclusion of the formal hearing, the hearing committee issued its report. The committee found that over a two-year period, respondent converted to his own use small amounts of client funds totaling $26,575, a clear violation of Rule 1.15(a) of the Rules of Professional Conduct. However, the committee recognized that this misconduct occurred during a period of time when respondent “was under extreme emotional distress for a variety of reasons.” The committee acknowledged that respondent repaid the converted funds and that he confessed his misconduct to his clients, although it noted that he probably did so because he was aware he was about to be caught.
Turning to the issue of sanctions, the committee identified several mitigating factors, including respondent’s lack of a prior disciplinary record and the lack of any harm to his clients from his misconduct. The committee did not specifically recognize the delay in the disciplinary proceedings as a mitigating factor, but found the delay had taken a great toll physically and emotionally on respondent. Considering all these factors, the committee recommended that respondent be Rsuspended from the practice of law for two years, with twenty months deferred, followed by three years of supervised probation with conditions.[4]
The ODC objected to the recommended sanction as too lenient.

*852
Disciplinary Board Report

In its report, the disciplinary board noted that a prima facie showing of a violation of the Rules of Professional Conduct was established by respondent’s admission that he commingled and converted client funds to his own use; as a result, the only determination to be made by-the board was the appropriateness of the sanction recommended by the hearing committee.
The board acknowledged that in cases where an attorney has intentionally commingled and converted client funds, this court has generally ordered disbarment.[5] However, in cases where long-term suspension or disbarment can be warranted, the court has refrained from applying the extreme remedies when the misconduct is offset by mitigating factors.[6]
| ¡¡Like the hearing committee, the disciplinary board identified numerous mitigating factors present in the instant case, including absence of prior discipline, good faith effort to make restitution, cooperative attitude toward the disciplinary proceedings, reputation in the community, and remorse. The board found the only aggravating factors are substantial experience in the practice of law (admitted 1978) and selfish motive.
Nonetheless, the board concluded that the hearing committee’s recommendation of a two-year suspension, with twenty months deferred, was too lenient in light of the prior jurisprudence. The board pointed out that respondent’s knowing and intentional conversion of funds was a very serious offense which deprived his clients of the use of the funds and caused injury or potential injury. Under these circumstances, the board recommended that respondent be suspended from the practice of law for two years, with sixteen months deferred, subject to specified conditions.[7]
Both respondent and the ODC filed an objection in this court to the disciplinary board’s recommendation, and the matter was set on the court’s docket for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
| (¡DISCUSSION
It is undisputed that respondent intentionally converted client funds, in violation of Rule 1.15(a) of the Rules of Professional Conduct. Accordingly, the sole issue before us in this matter is a determination of the appropriate sanction for respondent’s misconduct. In making such a determination, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
Respondent intentionally converted client funds to his own use. However, he reimbursed all the funds before his clients were aware of the conversion, and his clients were not actually harmed as a result. There are significant mitigating factors present, including lack of prior *853 discipline, restitution, good character and reputation, remorse, and cooperation with the ODC.[8] Applying the guidelines set forth in Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), we conclude the discipline recommended by the disciplinary board is appropriate. Accordingly, we will suspend respondent from the practice of law for a period of two years, with sixteen months of this suspension deferred, subject to the conditions recommended by the disciplinary board.
RDECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Eric R. Bissel be suspended from the practice of law in Louisiana for a period of two years. Sixteen months of said suspension shall be deferred, subject to the conditions recommended by the disciplinary board. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Lemmon, J., not on panel. Rule IV, Part II, § 3.

. The difference between the amount respondent withdrew from the account ($28,180) and the amount he restored ($26,575) was owed to respondent by the estate for attorney’s fees, and is reflected on respondent’s fee statement dated May 1, 1995.

. Respondent conceded that he did not initiate any further contact with the ODC during this period, but explained that he knew he was facing certain punishment for his misconduct and did not want to tell the ODC to "hurry up and prosecute me.” The ODC offered no explanation for the delay on its part.

. Respondent has served as chairman of the Covington Planning & Zoning Commission and the St. Tammany Historical Society, and he recently joined the board of the Covington Gardens Partnership. He is also very active with Head Start and the Boy Scouts, and has worked on advisory committees serving the St. Tammany Parish School Board and the St. Tammany Parish Police Jury.

. The committee recommended the following conditions:
1.That respondent participate in mental health counseling, that he waive the doctor-patient privilege, and that the mental health counselor report to the ODC the results of the counseling and a prognosis and diagnosis.
2. Respondent should be reinstated only upon the opinion of a competent mental health professional that he has overcome the factors that contributed to the instant offense.
3. Respondent should also submit for the approval of the ODC a plan of action that would provide for a three year period of probation, during which time all client funds in respondent’s hands would be subject to independent scrutiny, accounting, and monitoring.

. In re: Shields, 99-0439 (La.3/19/99), 731 So.2d 223; In re: Lewis, 98-2825 (La. 1/29/99), 728 So.2d 846; In re: White, 97-2731 (La.2/6/98), 706 So.2d 964.

. In re: Constantino, 98-0817 (La.6/5/98), 714 So.2d 690 (two-year suspension); Louisiana State Bar Ass’n v. Perez, 471 So.2d 685 (La.1985) (eighteen-month suspension); Louisiana State Bar Ass’n v. Hopkins, 447 So.2d 464 (La.1984) (one-year suspension).

. The board recommended the following conditions:
1. That respondent participate in mental health counseling and waive the doctor-patient privilege, allowing the counselor to report to the ODC the results of the counseling, including respondent's diagnosis and prognosis.
2. Respondent must also submit, for approval by the ODC, a plan of action that would provide for a three year period of probation, during which time all client funds are subject to independent scrutiny, accounting, and monitoring.

. In imposing discipline, respondent asks us to consider the delay in instituting discipline as a mitigating factor, in addition to those factors identified by the disciplinary board. Respondent asserts that this factor supports the hearing committee’s decision to impose only four months of actual suspension, as opposed to the eight-month actual suspension imposed by the disciplinary board. We agree that a delay of eighteen months between respondent’s proposal of consent discipline and the ODC’s rejection of that proposal is unreasonably long and caused respondent considerable emotional stress. However, respondent is at least partly to blame for the delay, as he admits he did not contact the ODC during this period to check on the status of his proposal. Under these circumstances, we are unable to identify the delay in the proceedings as a significant mitigating factor.