347 So.2d 1118 (1977)
LOUISIANA STATE BAR ASSOCIATION
v.
Harold B. McSWEEN.
No. 57805.
Supreme Court of Louisiana.
July 1, 1977.
*1119 John B. Scofield, Lake Charles, Chairman, Sam J. D'Amico, Baton Rouge, Wood Brown, III, New Orleans, Leonard Fuhrer, Alexandria, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, Henry A. Politz, Shreveport, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, Thomas O. Collins, Jr., New Orleans, Counsel for Louisiana State Bar Association Committee on Professional Responsibility, for petitioner.
Camille F. Gravel, Jr., Dee D. Drell, Gravel, Roy & Burnes, Alexandria, for respondent.
PER CURIAM.
On November 5, 1975, Harold B. McSween, former president of the Rapides Savings and Loan Association and a member of the Louisiana State Bar Association since 1950, was indicted under a four-count indictment returned by the grand jury of the United States District Court for the Western District of Louisiana. Count I was dismissed. McSween entered guilty pleas to counts II, III, and IV, each of which charged him with the violation of 18 U.S.C. § 1006 (receiving money from a federally insured savings and loan association with intent to defraud). He was sentenced to prison for a period of one year on each count, to be served concurrently, and ordered to pay a fine of $10,000 on each of the three counts. Execution of the sentences of imprisonment was suspended and McSween was placed on supervisory probation for a period of five years. As a special condition of probation he was ordered to refrain from the practice of law for one year from January 31, 1976.
On April 2, 1976, the Louisiana State Bar Association, through its Committee on Professional Responsibility, filed in this Court a petition charging McSween with professional misconduct and seeking disciplinary action. We appointed Cecil E. Ramey, Jr. Commissioner to conduct a hearing and make recommendations.
After reviewing the transcript of the evidentiary hearing at which McSween was the only witness, as well as all other affidavits and documents of record, we adopt the Commissioner's findings of fact which, in pertinent part, provide:[*]
"At the hearing Respondent's attorney gave as Respondent's reasons for the guilty plea his business involvements and, for a number of personal and financial reasons, his inability to go through long, drawn-out judicial proceedings without financial disaster.
"Count II charged that Respondent, as President of Rapides Savings & Loan Association, a duly authorized savings and loan association, the deposits and accounts of which were insured by the Federal Savings & Loan Association, and another officer of said Association, with intent to defraud said Association, unlawfully and wilfully did participate, share in, and directly and indirectly receive monies and benefit by means of a check in the amount of $36,000, dated November 18, 1970, payable to S. Conrad Weil, Jr., and purportedly representing proceeds and disbursements of a loan to S. Conrad *1120 Weil, Jr., all in violation of Title 18, United States Code, Section 1006.
"Count III of said indictment charged that, on or about January 29, 1971, Respondent, and another officer of said Association, with intent to defraud said Association, unlawfully and wilfully did participate, share in, and directly and indirectly receive monies and benefits by means of a check in the amount of $27,000, dated January 29, 1971, payable to J. E. Fryar and purportedly representing proceeds and disbursements of a loan to E. M. Glynn, Inc., all in violation of Title 18, United States Code, Section 1006.
"Count IV charged that Respondent, on or about May 4, 1972, with intent to defraud said Association, unlawfully and wilfully did participate, share in, and directly and indirectly receive monies and benefits by means of a disbursement by said Association of a check in the amount of $26,561, dated May 4, 1972, payable to E. M. Glynn, Inc., and purportedly representing proceeds and disbursements of a loan to E. M. Glynn, Inc., all in violation of Title 18, United States Code, Section 1006.
"In the course of his testimony, at the hearing, Respondent admitted that he received the funds referred to in Count II, that they came from the proceeds of a loan to Mr. Weil and others, and that said payment was not disclosed. He contended that the funds were paid by personal check of Mr. Weil, that he was not aware at the time that he had a duty to disclose the indirect payment, and that the funds were paid to him as a fee for rezoning a piece of property in Alexandria. Respondent first testified that the fee was based on a percentage of the loan, but later stated that his fee had been fixed at $20,000, of which he received only $18,000.
"He admitted receiving at least part of the funds referred to in Count III, contending that the funds represented a 2% brokerage fee for attempting to obtain participation by another lending institution in a loan to which Rapides Savings & Loan Association was committed.
"In connection with Count IV, he admitted receiving the funds referred to in said Count, but contended that they came directly from his associate, Mr. Asher, in settlement of some business between them and not from the proceeds and disbursements of any loan by Rapides Savings & Loan Association."
Article XV, § 8, paragraph 7 of the Articles of Incorporation of the Louisiana State Bar Association, under which this proceeding was brought, provides in pertinent part:
"(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
"(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime."
An essential element of the crime for which respondent was convicted was the "intent to defraud" Rapides Savings and Loan Association. See, 18 U.S.C. § 1006. The issue of respondent's criminal intent was concluded against him by his plea of guilty and could not be tried anew in this proceeding. The only question before the Commissioner, and that with which we are here faced, is whether the crime warrants discipline, and if so, to what extent.
The offense in question, a felony involving intent to defraud, trenches upon at least two basic precepts of the Code of Professional Responsibility:
Disciplinary Rule 1-102 provides in part:
"(A) A lawyer shall not:
"* * *
"(3) Engage in illegal conduct involving moral turpitude.
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." *1121 Respondent notes that the criminal charges did not arise out of his law practice and urges that, in reaching a decision as to the appropriate disciplinary action, we be mindful of our decree in Louisiana State Bar Association v. Ponder, 340 So.2d 134, 148 (La.1976), that "a disciplinary action is not so much for the punishment of the attorney as it is for the preservation of the integrity of the courts and the salutary effect it has upon other members of the bar." We adhere to this view, but find at the heart of respondent's conduct a breach of fiduciary duty so serious that it casts doubt upon his ability to represent legal clients with undivided loyalty. See, Code of Professional Responsibility, Canon 5. Finding that respondent's conduct reflects adversely upon his ability to practice law, we conclude that disciplinary action is warranted.
Nevertheless, evidence of mitigating circumstances properly introduced before the Commissioner convince us that the harshest penalty, disbarment, is not in order. Respondent has been a member of the bar for many years and despite his present difficulties, has maintained a good reputation among many of his professional associates and members of the lay community. Furthermore, since January 31, 1977, when respondent was no longer required as a condition of his probation to refrain from practicing law, he has voluntarily done so in a spirit of contrition.
The Commissioner recommended that McSween be suspended from the practice of law for a period of at least two years from January 31, 1977.
We have considered all of the mitigating evidence of record, not as tending to disprove McSween's guilt, but for the sole purpose of determining whether the crime warrants discipline, and if so, the extent thereof. Article XV, § 8(7) (d) of the Louisiana State Bar Association Articles of Incorporation. In our opinion, the criminal behavior of the respondent warrants a three-year suspension from the practice of law.
Accordingly, it is ordered that Harold B. McSween be suspended from the practice of law for a period of three years, dating retroactively from his suspension on January 31, 1976 by federal court order, at respondent's cost.
NOTES
[*] Citations to the transcript and footnotes are omitted from the Commissioner's findings of fact.