457 So.2d 649 (1984)
LOUISIANA STATE BAR ASSOCIATION
v.
Frank J. LARRE'.
No. 83-B-1246.
Supreme Court of Louisiana.
October 15, 1984.
Rehearing Denied November 15, 1984.
*650 Thomas O. Collins, Jr., Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Jr., for applicant.
Robert T. DeFrancesch, Lawrence D. Wiedemann, New Orleans, for respondent.
DENNIS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this proceeding for disciplinary action against Respondent, Frank Larre'. The Committee's petition charged the respondent, with five specifications of professional misconduct arising out of three unrelated incidents. We find, as did the Commissioner, that Respondent committed the alleged acts of misconduct, and conclude that he should be suspended from the practice of law for six months.
In the first incident, Respondent was retained by three clients to represent them in their personal injury claims and filed suit in the district court in their behalf. In November of 1981, he settled the suit and received drafts on behalf of his clients pursuant to the settlement agreement in the total amount of $4,735.00. Respondent failed to disburse these funds to his clients, and commingled and converted them to his own use. In the second incident, Respondent was retained to represent three other clients in their personal injury claims, and in January of 1982 settled the claims. Drafts in the total amount of $6,900.00 were received by him in behalf of his clients in January of 1982, but he failed to disburse any funds to his clients, and commingled and converted them to his own use. Much of the above monies were deposited in Respondent's attorney trust account, and some of the drafts were kept in his files uncashed for long periods of time. There is no dispute concerning the facts that Respondent commingled and converted. In March of 1982, Respondent's trust account was seized to satisfy his $2,000 debt; both before and after the seizure, Respondent admittedly withdrew funds from the account for his living expenses. Finally, Respondent was retained in March of 1981 to file a bankruptcy petition in his client's behalf, and in connection therewith was paid an advance fee of $300.00. He did not perform the work for which he was hired and failed to communicate with his client or to return the fee.
In mitigation of the above misconduct, Respondent introduced evidence of emotional disturbance on his part during the times involved. His condition apparently was the product of a combination of difficult circumstances, the most severe of which was the 1978 shooting murder of his father-in-law by his mother-in-law, followed by his participation in the defense of his mother-in-law and her moving into the respondent's home. In 1979, respondent's wife quit her full time job, leaving Respondent as the sole supporter for the family, and in early 1980 the couple had their second child. Respondent received brief psychiatric treatment in late 1980, and has been undergoing continuing therapy since December of 1982. Dr. Wickett, whom Respondent consulted in 1980, diagnosed his condition as severe depression, and Dr. Seastrunk, who has been treating Respondent more recently, diagnosed his condition as major depression. Both witnesses noted a decreased ability to concentrate, and Dr. Seastrunk testified that this sort of depression affects judgment. The testimony further indicates that Respondent has been rehabilitated by the treatment to the extent that he is now capable of conducting a practice in a responsible and professional manner.
We also note the Commissioner's finding that Respondent has reimbursed each of his clients. While that action does not obviate the need for disciplinary action, it is a proper factor to consider in mitigation of his misconduct, as is the lack of any *651 prior disciplinary action taken against him. Louisiana State Bar Ass'n v. Philips, 363 So.2d 667 (La.1978); Louisiana State Bar Ass'n v. Weysham, 307 So.2d 336 (La.1975); Louisiana State Bar Ass'n v. Levy, 292 So.2d 492 (La.1974).
The purpose of lawyer disciplinary proceedings is to protect the public and the administration of justice, and to maintain the high standards of professional conduct embodied in the Code of Professional Responsibility. Louisiana State Bar Ass'n v. Heymann, 405 So.2d 826 (La. 1981); Louisiana State Bar Ass'n v. Quaid, 368 So.2d 1043 (La.1979); Louisiana State Bar Ass'n v. McSween, 347 So.2d 1118 (La.1977). The discipline to be imposed in a particular case will depend upon the seriousness and circumstances of the offense, fashioned in light of the purpose of lawyer discipline, taking into account aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Heymann, supra at 829; Louisiana State Bar Ass'n v. Bensabat, 378 So.2d 380 (La. 1979).
The Commissioner recommended that Respondent be suspended for a period of six months, based on his conclusion that the involved misconduct is too serious for a mere reprimand, although the mitigating considerations make appropriate a shorter period of suspension than might otherwise be imposed. We agree with the Commissioner's reasoning and recommendations.
Accordingly, Respondent Larre' is suspended from the practice of law for six months, effective with the finality of this judgment.