571 So.2d 161 (1990)
LOUISIANA STATE BAR ASSOCIATION
v.
Burton GUIDRY.
No. 88-B-0829.
Supreme Court of Louisiana.
December 3, 1990.
James Reed Barrow, G. Fred Ours, for Louisiana State Bar Ass'n, plaintiff-applicant.
Burton P. Guidry, for Burton Guidry, defendant-respondent.
*162 James E. Boren, for Burton Guidry, defendant-respondent.

DISCIPLINARY PROCEEDING
HALL, Justice.
After receiving a complaint in 1986, the Committee on Professional Responsibility (the Committee) of the Louisiana State Bar Association investigated a specification of misconduct on the part of attorney Burton Guidry concerning Guidry's representation of two nursing homes in 1982. The alleged misconduct involves commingling and conversion of a client's funds and the neglect of a legal matter entrusted to the attorney.
The Committee held a formal investigative hearing on May 1, 1987. The Committee, by unanimous vote, found that Guidry had violated the laws of professional conduct of lawyers and that these violations were of sufficient gravity to evidence a lack of moral fitness for the practice of law.
On April 6, 1988, the Committee filed a petition for disciplinary action. Guidry timely filed an answer to the petition, and a Commissioner was appointed on September 22, 1988. Guidry represented himself at the Commissioner's hearing on November 4, 1988. The Commissioner filed his report with the court, but subsequently Guidry retained counsel and requested a second Commissioner's hearing. This motion was granted, and the Commissioner held a hearing on October 25, 1989. The Commissioner filed a supplemental report with the court, and this matter proceeded to oral argument on October 22, 1990.
The misconduct alleged is that Guidry's handling of the two cases in question constituted a violation of Disciplinary Rules 1-102, 6-101(A)(3), and 9-102(A), (B) of the Code of Professional Responsibility of the Louisiana State Bar Association.[1] The Bar Association has the burden of establishing by clear and convincing evidence that Guidry was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).
The facts in this matter are not really in dispute. The evidence taken at the hearings established that Guidry, practicing as a member of the law firm of Edwards & Guidry, was employed in 1982 by his friend, David Guillot, owner of Gonzales Health Care (Gonzales), and part owner of Amite Nursing Home (Amite), to represent *163 him in defense of suits brought against the operators of the nursing homes by American Mutual Insurance Company of Boston.
Guidry contacted the counsel for the plaintiff and offered to settle the two cases. Apparently, there was a misunderstanding concerning this settlement discussion. Nevertheless, Guidry, believing that his proposal had been accepted, notified Mr. Guillot, who sent him checks from each entity ($1,635.50 from Gonzales, and $1,500.00 from Amite). These checks were deposited by Guidry into his firm's general account, which was overdrawn at the time. No settlement payment was made from these funds in either case, and the account was subsequently depleted by paying firm obligations when the law firm was dissolved in late 1982.
The Gonzales case was continued and rescheduled a number of times with notice given to Guidry each time. Nevertheless, Guidry failed to take any steps to protect his client, and a judgment was rendered against Mr. Guillot. Mr. Guillot subsequently had the judgment canceled by remitting $5,316.00 to American Mutual Insurance Company. Mr. Guillot hired other counsel to represent him in the Amite matter, and that case was subsequently settled for $4,500.00.
The findings of the Commissioner were that Guidry's negligence resulted in a commingling of his client's funds with those of his law firm, and a conversion of those funds for his benefit. He also neglected the legal matter entrusted to him by allowing a default judgment to be entered against his client. Guidry's actions were clearly violations of Disciplinary Rules 1-102, 6-101(A)(3), and 9-102(A), (B) of the Code of Professional Responsibility. These findings are not contested by Guidry.
The recommendation of the Commissioner after his first hearing was that Guidry be suspended from the practice of law for a period of six months. As previously noted, Guidry then retained counsel to represent him in this matter and was granted a reopening of the Commissioner's hearing. At this second hearing, it was revealed that Guidry had been suffering from clinical depression and a resulting mixed substance abuse (food and marijuana) stemming from events which occurred during the same time period as the misconduct involved in this matter. These events were the traumatic divorce from his first wife and the breakup of his law partnership with Stephen Edwards. Guidry points to this depression in mitigation of his apparent lack of cooperation with, and belligerent attitude toward, the Committee.
After this second hearing, the Commissioner filed a supplemental report recommending that Guidry be suspended for a period of six months with the further proviso that the period be shortened upon a showing that he has been rehabilitated.
The recommendation of the Office of Disciplinary Counsel is a suspension from the practice of law for two years, with the condition that Guidry must prove that his depression and marijuana use have been treated and removed prior to reinstatement.[2]
Guidry argues that he has been sufficiently punished by the public scrutiny of these ongoing proceedings since the investigation was begun in April of 1986. He also argues that he has been fully rehabilitated, having been free from substance abuse and in continuing psychiatric treatment since June of 1989. Guidry asserts that he is well and urges this court to fashion a remedy which recognizes his assumption of the responsibility for his acts and his successful efforts at rehabilitation.
The discipline to be imposed on an attorney for ethical violations will depend on the seriousness of the offense involved and the facts and circumstances of each case. Louisiana State Bar Association v. White, 538 So.2d 256, 261 (La.1989). The choice of sanctions is not governed by strict rules, but rather depends on the degree *164 of misconduct in the individual case. In Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986), we set forth categories of discipline for commingling and conversion cases. Factors which are to be considered in making this determination include: whether the lawyer acts in bad faith; commits fraud or forgery; makes restitution, and whether such restitution is before or after disciplinary or legal proceedings; the magnitude and duration of the deprivation; and the magnitude or risk of damage, expense or inconvenience to the client.
We have examined the facts involved in this matter and the various proposals for discipline and are of the opinion that this case fits within the category warranting a suspension of one year or less. This category of commingling and conversion cases was recently evaluated by this court in Louisiana State Bar Association v. Gold, 563 So.2d 855 (La.1990).
As in Gold, several mitigating factors indicate a suspension of six months rather than a more severe discipline. Guidry's misconduct resulted from negligence on his part rather than from an intentional wrongdoing. He had developed a heavy case load and took on these additional matters which he apparently had neither the time nor the expertise to handle. His ethical violations were caused by his inexperience, carelessness, and neglect. While his actions were serious breaches of his ethical responsibilities, they were not done with the intent to harm or deprive his client.
Guidry has reimbursed Mr. Guillot fully for all of his damages. While part of this reimbursement did not come until after the Committee investigative hearing, it was a full reimbursement, and Guidry has expressed remorse and apologies for his conduct. Additionally, Guidry has not sought to excuse or lighten the seriousness of his misconduct. He had no disciplinary charges prior to the conduct complained of in this case.[3]
An additional mitigating factor in this case is the delay in bringing and concluding disciplinary action. This is an ordeal which punishes a respondent over and beyond the discipline imposed by this court. Louisiana State Bar Association v. Edwards, 387 So.2d 1137, 1139 (La.1980); Louisiana State Bar Association v. Gold, supra. The offenses involved in this case occurred approximately eight years ago. While some of the delay was caused by Guidry seeking a second Commissioner's hearing, the Committee did not file a petition for disciplinary action until approximately six years after the misconduct and about three years after receiving the initial complaint. As stated in Gold and Edwards, this court takes into consideration unreasonable delay in imposing discipline on an attorney who has used the intervening years wisely in rehabilitating himself.
The fact that an attorney was suffering from personal or emotional problems at the time of his misconduct is a mitigating factor. In this case, Guidry clearly had emotional problems subsequent to his misconduct. He was experiencing several emotional events at the time of the misconduct, but the record indicates that his clinical depression was not diagnosed until 1986. The fact that he was suffering from clinical depression during the early stages of these proceedings has the effect of excusing, at least to some extent, his belligerent attitude toward, and failure to cooperate with, the Committee in the early stages of these proceedings before he began treatment of his depression. It has the additional effect of raising the issue of whether Guidry is emotionally fit to practice law at this time.
Guidry began treatment for his depression in June of 1989, and declares that he has been free of marijuana use since that time. His treating psychiatrist, Dr. Krishna Yalamanchili, stated that as of October 1990, Guidry was continuing his counseling sessions once a month and seemed to have a good insight into his condition and a *165 willingness to go along with his treatment plan.
Guidry is presently working for the Baton Rouge Public Defender's Office and has a small private practice out of his home. He has apparently done well with the Public Defender's Office and has volunteered for service with the State Bar Association's Committee which aids fellow attorneys with substance abuse problems.
Any imposition of discipline must take into consideration the purposes of disciplinary proceedings, that is, to maintain appropriate standards of professional conduct and thus safeguard the public; to preserve the integrity of the legal profession; and to deter other attorneys from engaging in violations of the standards of the profession. Louisiana State Bar Association v. White, supra, at 261.
Taking these purposes and the mitigating factors into consideration, we are of the opinion that a suspension from the practice of law for a period of six months is warranted.
We recognize the harshness of any suspension from practice after such a long period of time has elapsed since the violation, and we are also aware of the possible detrimental effect this could have on the progress of Guidry's rehabilitation. Nevertheless, the severity of the violations warrant a suspension rather than a reprimand or some form of probation.
Guidry's emotional health is of concern to the court and he must be sufficiently rehabilitated before he is allowed to be reinstated to the practice of law. Therefore, as an additional disciplinary measure, in order for him to be reinstated, Guidry will be required to petition this court for reinstatement at the end of his six-month suspension. At that time, he will be required to show that he has continued his psychiatric treatments and that he has the emotional stability to handle the legal matters of his clients.

DECREE
For the foregoing reasons, respondent Guidry is suspended from the practice of law for six months, effective from the finality of this judgment. It is further ordered that for Guidry to be reinstated, he must petition the court at the conclusion of his six-month suspension for such reinstatement and make a showing that he has continued his psychiatric treatments and is emotionally fit to practice law. All costs of these proceedings are assessed to respondent.
NOTES
[1] The alleged violations in this case occurred prior to the adoption of the Rules of Professional Conduct effective January 1, 1987, and are governed by the Code of Professional Responsibility in effect at the time of the violations:

"DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
"DR 6-101 Failing to Act Competently.
(A) A lawyer shall not:
.... (3) Neglect a legal matter entrusted to him."
"DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."
[2] The Office of Disciplinary Counsel has appeared on behalf of the Disciplinary Board, successor to the Committee under Rule XIX, effective April 1, 1990. However, since the Commissioner's hearing in this case was held prior to the effective date, the substantive provisions of Rule XIX are not applicable to this proceeding. See Rule XIX, Section 32.
[3] It was brought out for the first time, in oral argument by disciplinary counsel, that Guidry was the subject of private reprimands subsequent to the events which led to these proceedings.