ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This attorney disciplinary proceeding arises from the filing of formal charges by the Office of Disciplinary Counsel (“ODC”) against respondent, William R. Boone, an *534 attorney licensed to practice law in the State of Louisiana, but currently on interim suspension.[1]
UNDERLYING FACTS
Respondent had previously represented Ted and C.T. Paul, two elderly brothers who owned considerable immovable property. When Ted Paul was diagnosed with terminal cancer in early 1996, the Pauls consulted with respondent regarding drafting last wills and testaments on their behalf. '
During the course of discussion, the Paul brothers indicated they had approximately $247,000 in cash, which they owned in equal shares and kept in a bank safety deposit box. The Pauls expressed a fear that, if Ted Paul died, the bank might freeze the box and bar C.T. Paul from having access to the funds. To avoid this problem, respondent agreed to hold the cash in his office safe.
| ^Shortly thereafter, respondent began periodically removing the Pauls’ cash from the safe without their permission and knowledge, and converted the funds to his personal use. Eventually, respondent had exhausted all of the entrusted funds.
In November of 1996, Ted Paul died. Respondent completed the succession, which apparently was a relatively uncomplicated process. In connection with state and federal tax documents filed on behalf of Ted Paul’s ■ estate, respondent listed his legal fee as $30,000. Interestingly, respondent did not include Ted Pauls’ interest in the cash held in respondent’s safe as an asset of the succession.
In June of 1998, C.T. Paul came to respondent’s office, seeking a return of the $247,000 .in cash. Respondent admitted he converted the funds, but promised to make full restitution. C.T. Paul reported respondent’s actions to the Sabine Parish District Attorney’s Office and the State Justice Department. After a criminal investigation, respondent was charged with unauthorized use of a movable in violation of La. R.S. 14:68.[2]
Eventually, respondent paid C.T. Paul $217,000 in restitution, claiming the remainder of the funds (approximately $30,-000) constituted his legal fees in connection with Ted Paul’s succession and other matters. C.T. Paul ultimately retained new counsel, who advised him, as well as respondent, that respondent’s assessed legal fee was excessive. However, respondent failed to place the disputed funds in a trust account to protect his client’s interests.
^DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed formal charges against respondent, alleging violations of Rules 1.5 (failure to place disputed fees in a trust account), 1.15 (commingling and conversion of client funds), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (engaging in criminal conduct that adversely reflects on the lawyer’s honesty, trustworthiness, or fitness), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice) and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
Respondent filed an answer admitting to the allegations of misconduct, except with respect to the disputed fee. Respondent contended that he was unaware there was a fee dispute since he was never advised of such by his client, and that only a portion of the fee was in dispute since C.T. Paul *535 had allegedly acknowledged to his new counsel that a $20,000 fee was owed to respondent. Respondent requested a hearing for the sole purpose to offer mitigating evidence.

Hearing Committee Recommendation

A formal hearing was held before the committee. The ODC presented the testimony of C.T. Paul. Respondent testified on his own behalf.
At the conclusion of the hearing, the committee found the ODC proved by clear and convincing evidence that respondent failed to properly segregate the disputed attorney fees. In support, it determined respondent should have known there was a dispute over the fees when C.T. Paul’s new attorney advised respondent that he believed the fees were excessive.
|/The committee further rejected respondent’s assertion that he had no premeditation or predisposition to gain access to the funds belonging to the Pauls. In support, it relied on La. R.S. 6:321(A)[3] to conclude respondent, who was a banking lawyer, knew or should have known that his clients’ money could have remained in the safety deposit box, and the survivor would have had free access to the funds.
Turning to the issue of sanctions, the committee found respondent acted in bad faith and deprived his clients of a significant amount of money placed with him for safekeeping. It concluded respondent’s actions caused injury to C.T. Paul, who was subjected to significant legal expense in resolving the matter.
As aggravating factors, the committee found respondent had a dishonest or selfish motive, demonstrated a pattern of misconduct (due to repetitive withdrawals of clients’ cash over prolonged period of time constituting a separate conversion on each occasion, as well as complicity in the coverup of succession assets in order to avoid state and federal estate related taxes), and committed multiple offenses. It further recognized that respondent’s victims were vulnerable, and that respondent had substantial experience in the practice of law, having been admitted to the bar since 1974. In mitigation, the committee recognized respondent’s absence of a prior disciplinary record, his personal or emotional problems, his good character or | ^reputation and his remorse for his actions. After considering these factors, the committee concluded disbarment was appropriate discipline under the facts.

Disciplinary Board Recommendation

The disciplinary board found respondent violated duties owed to his client, the public, the legal system and the profession. It determined his actions were knowing and intentional and resulted in actual injury to C.T. Paul and to Ted Paul’s heirs.
The board noted this court has disbarred attorneys for conversion of client funds. In re: Gambel, 99-0521 (La.3/26/99), 733 So.2d 1180; In re: Ferrand, 99-0225 (La.4/1/99), 731 So.2d 874; In re: Shields, 99-0439 (La.3/19/99), 731 So.2d 223. Based on this authority, the board found no reason to depart from the hearing committee’s recommendation of disbarment. Accordingly, the board recommended respondent be disbarred from the practice of law, as well as assessed with all costs of these proceedings.
*536 Neither the ODC nor respondent filed an objection in this court to the board’s recommendation.
DISCUSSION
The record supports the findings of the hearing committee that respondent converted a substantial amount of funds entrusted to him by his clients and failed to properly place the disputed attorney fees in his trust account. Therefore, the sole issue presented to us is the appropriate sanction for respondent’s misconduct.
In making a determination of the appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the [^public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
In Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), we explained the typical elements which are found in a disbarment case based on conversion:
In a typical case of disbarment ... one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client’s interests; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused by the client is great; the lawyer either fails to make full restitution or does so tardily after pressure of disciplinary or legal proceedings.
All of these elements are present in the instant case. The committee found respondent acted in bad faith and with fraudulent intent when he failed to advise his clients they could have left their money in their safety deposit box, rather than placing it in respondent’s safe. The duration of the deprivation of the funds was great, causing considerable expense and inconvenience to C.T. Paul. While respondent ultimately made restitution he did not do so until after C.T. Paul commenced criminal proceedings against him.
Based on these factors, we conclude disbarment is the appropriate sanction under the facts of this case.
|7DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and the record filed herein, it is the decision of the court that the disciplinary board’s recommendation be adopted.
Accordingly, it is ordered that the name of William R. Boone be stricken from the rolls of attorneys and that his license to practice law in the State of Louisiana be revoked. All costs and expenses of these proceedings are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest commencing thirty days from the date from the finality of the court’s judgment until paid.

. On January 29, 1999, this court placed respondent on interim suspension based on the same charges which form the basis for the instant disciplinary proceeding. In re: Boone, 98-3195 (La. 1/29/99); 730 So.2d 868.

. In January of 1999, respondent pled guilty to the charge. He was sentenced eight months later. The record does not contain information regarding the sentence ultimately imposed.

. La. R.S. 6:321(A) provides:
When a safety deposit box is leased from any bank under the names of two or more persons with the right of access being given to any one of such persons, the survivor or survivors, whether or not the other or others are living, has and the bank may permit any of them to have free access to the safety deposit box, including the right to remove the contents thereof. In such case, the entry of any person or persons into the safety deposit box shall constitute a full release and discharge of the bank permitting such entry as to any heir, legatee, creditor, or other person have rights to claims to funds or property of the decedent. No bank permitting entry into the safety deposit box in accordance with the provisions of this Section shall be liable for the estate, inheritance, or succession taxes which may be due this state.