ATTORNEY DISCIPLINARY PROCEEDINGS
I,PER CURIAM.
This attorney disciplinary proceeding arises from the filing of formal charges by the Office of Disciplinary Counsel (“ODC”) against respondent, Daniel R. Keele, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS

Lutke Matter

Wayne Lutke filed a disciplinary complaint against respondent with the ODC.[1] Respondent failed to timely answer the complaint, and' subpoenas were issued compelling his appearance and production of documents at a scheduled deposition on October 30, 1997. Although he received notice, he failed to appear, but did forward a copy of his work file to the ODC.
In December of 1997, the ODC wrote to respondent advising it received his file and asked for a more substantive response. When no response was received, additional subpoenas were issued compelling his attendance and production of documents at a scheduled deposition on March 17, 1998. Again, respondent failed 12to appear, although he received formal notice. The ODC eventually received an answer from *1264 respondent over three months later. While he advised he failed to appear for the scheduled March, deposition due to scheduling problems, he did not explain his failure to attend the October deposition.

Smith Matter

In March of 1995, Hayward Smith retained respondent to institute a suit for personal injuries sustained in a vehicular accident while being transported for incarceration to the Caddo Correctional Center.[2] Respondent filed the petition. Based on his preliminary investigation in the matter, he determined the case was not economically feasible to pursue. However, he failed to properly advise his client of his decision not to pursue the matter and took no further substantive action on the case for the subsequent two years.
On October 9, 1997, Mr. Smith filed a disciplinary complaint with the ODC. Respondent failed to timely respond to the complaint. The ODC issued subpoenas to respondent compelling his appearance and production of documents at a scheduled deposition on January 7, 1998, but respondent failed to appear.[3] In a letter dated April 1, 1998, the ODC asked respondent for a case status report and explanation of why he failed to honor the subpoena. Respondent replied to the letter on May 11, 1998 stating he was “taking steps to move his litigation forward now that he was back in communication with his client.” On July 1, 1998, not being satisfied with respondent’s prior response, the ODC requested documentary proof of the status of the case. At some point, respondent provided a response, because on July 30, [ ¡¡October 22 and November 23, 1998, the ODC wrote to respondent insisting upon an answer to its inquiry. Respondent failed to file an answer.

Hariston Matter

In 1996, respondent was appointed to represent John Hariston in criminal proceedings. Subsequently, Mr. Hariston filed a disciplinary complaint against respondent with the ODC alleging ineffective assistance of counsel, neglect of a legal matter and failure to communicate. Respondent failed to timely provide an answer. The ODC issued subpoenas compelling his appearance and production of documents at a scheduled deposition. After receiving notice of the subpoena, respondent filed a general response stating he needed additional time to review his file in order to thoroughly address the allegations in more detail. The day before the deposition, respondent faxed his file to the ODC. Respondent appeared at his scheduled deposition and gave a sworn statement in the matter. As to his failure to respond to the ODC’s earlier request, respondent cited personal matters which barred his ability to focus on the disciplinary proceeding.

Strange/Williams Matter

In 1997, Felicia Strange paid respondent $500 to file a criminal appeal on behalf of her fiancee, Frank Williams. Respondent had represented Mr. Williams at his criminal trial. While respondent timely filed the notice of the appeal, he failed to file the appeal. However, respondent later testified that he filed the notice of the appeal as a purely precautionary measure. *1265 After reviewing the matter, respondent concluded there was no merit to the appeal and communicated this fact to Mr, Williams.
Subsequently, Ms. Strange filed a complaint with the ODC alleging respondent | ¿would not communicate with her, failed to file the appeal and failed to provide an accounting and a refund of the unearned fee. According to the ODC, respondent failed to timely respond to the complaint and, as a result, subpoenas were issued compelling his appearance and production of documents at a scheduled deposition. Respondent appeared and gave a sworn statement in the matter.

Cheatwood Matter

In late 1994, Roy Cheatwood retained respondent to institute a wrongful termination suit against Mr. Cheatwood’s former employer. Respondent later testified that he investigated the matter and concluded there was no basis for a suit. According to respondent, he sent Mr. Cheatwood a letter on December 28, 1994 advising him that the attorney-client relationship was terminated. However, Mr. Cheatwood denied receiving the letter. In any event, no petition was filed and the claim prescribed.
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed formal charges against respondent alleging several violations of the Rules of Professional Conduct. With regard to the Lutke matter, the ODC alleged violations of Rules 8.1(c) (failure to cooperate in ODC investigation); 8.4(a) (violating the professional rules); and 8.4(g) (engaging in conduct prejudicial to the administration of justice). In the Smith matter, the ODC alleged violations of Rules 1.3 (neglect); 1.4 (failure to communicate); 1.16 (failure to protect client interests at termination of representation); 3.2 (failure to expedite litigation); 8.1(c) (failure to cooperate in ODC investigation); 8.4(a) (violating the professional rules); and 8.4(g) (engaging in conduct prejudicial to the administration lBof justice). In the Hariston matter, the ODC alleged violations of Rules 8.1(c) (failure to cooperate in ODC investigation); 8.4(a) (violating the professional rules); and 8.4(g) (engaging in conduct prejudicial to the administration of justice). In the Strange/Williams matter, the ODC alleged violations of Rules 1.3 (neglect); 1.4 (failure to communicate); 1.5 (failure to account for and refund unearned fees); 1.16 (failure to protect client interests at termination of representation); 8.1(c) (failure to cooperate in ODC investigation); 8.4(a) (violating the professional rules); and 8.4(g) (engaging in conduct prejudicial to the administration of justice). Finally, with regard to the Cheatwood matter, the ODC alleged violations of Rules 1.3 (neglect); 1.4 (failure to communicate); 1.5 (failure to account for and refund unearned fee); '1.16 (failure to protect client interests at termination of representation); 8.1(c) (failure to cooperate in ODC investigation); 8.4(a) (violating the professional rules); and 8.4(g) (engaging in conduct prejudicial to the administration of justice).
Respondent filed an answer denying any professional misconduct. As a result, the matter was scheduled for formal hearing before the hearing committee.

Hearing Committee Report

At the hearing, the ODC presented the testimony of several of the complainants. Respondent testified on his own behalf and his testimony conflicted in large part with the testimony of the complainants.
*1266 At the conclusion of the formal hearing, the hearing committee filed its recommendation. The hearing committee found there was sufficient evidence to support the failure to cooperate charges arising from the Lutke matter. As to. the Smith matter, it found no evidence that respondent neglected Mr. Smith’s case or failed to expedite his litigation in violation of Rules 1.3 and 3.2. However, it concluded respondent failed to communicate with Mr. Smith in violation of Rule 1.4 ^insofar as respondent failed to properly and unequivocally communicate to Mr. Smith his appraisal of the suit and his unwillingness to proceed.[4] Moreover, the committee concluded respondent failed to cooperate with the ODC in its investigation of Mr. Smith’s complaints.
With respect to the charges arising from the Hariston matter, Strange/Williams matter and Cheatwood matter, the committee found the ODC did not prove these charges by clear and convincing evidence, and recommended they be dismissed. Specifically, with respect to the failure to cooperate charge forming the basis of the Hariston matter, the committee found respondent’s answer to Mr. Hariston’s complaint may not have been as substantive or as timely as the ODC may have desired, but noted respondent requested additional time to answer the allegations in more detail. The committee concluded the request should have been considered as a request for an extension of time.
As to the Strange/Williams matter, the committee determined respondent properly communicated to Mr. Williams that he was not filing an appeal in the matter. It found no violation of Rule 1.5 for failure to account for and refund an unearned fee, concluding that Ms. Strange paid respondent a fee “under a mistake of fact” since respondent was in fact not handling the appeal. Thus, it declined to find a disciplinary violation, but recommended respondent refund the payment to Ms. Strange. The committee also determined there was insufficient evidence to support the finding respondent failed to cooperate with the ODC since respondent provided a response to Ms. Strange’s complaint, albeit a tardy one, alleging he had no attorney-client relationship with Ms. Strange.
Finally, as to the Cheatwood matter, the committee found respondent was 17credible when he testified he sent Mr. Cheatwood a letter terminating the representation. While the committee questioned whether respondent’s failure to send the letter by certified mail in light of the pending prescriptive date was a malpractice matter, it concluded his actions did not constitute an ethical violation. As to respondent’s failure to cooperate, the committee concluded respondent’s failure to reply to the ODC’s request for a document which did not exist (a certified mail receipt from the termination letter) did not materially interfere with its investigation.
As a sanction, the committee recommended respondent be suspended for thirty days in the Lutke matter and thirty days in the Smith matter, with the suspensions running concurrently.
The ODC filed an objection to each of the committee’s findings relating to the dismissed charges.

Disciplinary Board

The disciplinary board adopted the committee’s findings of fact, noting that the *1267 committee’s factual findings were based on its evaluation of the witnesses appearing before it and were entitled to great weight. However, the board found that the committee erred in failing to find that respondent’s conduct in the Lutke and Smith matters also violated Rule 8.4(a), which provides that it is misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct.
In addressing the issue of sanctions, the board reviewed the jurisprudence and determined the proposed sanction recommended by the hearing committee was too lenient. Instead, it recommended an eight month suspension, with five months deferred, followed by a six-month period of probation. One board member dissented without assigning reasons.
Both respondent and ODC filed an objection to the board’s recommendation |sand, therefore, the matter was docketed for oral argument pursuant to Rule XIX, § 11(G)(1)(b).
DISCUSSION
The ODC’s primary argument in this matter is that the hearing committee and disciplinary board erred in dismissing part of the charges in the Smith matter, as well as the entire charges in the Hariston matter, Strange/Williams matter and Cheat-wood matter. The ODC contends that the record demonstrates it proved these charges by clear and convincing evidence.
In accepting the factual findings of the hearing committee, the disciplinary board applied the manifest error standard set forth by this court in Rosell v. ESCO, 549 So.2d 840 (La.1989). Under this standard, we have held that in civil cases, an appellate court should not set aside the fact-finder’s reasonable evaluations of credibility and reasonable inferences of fact in the absence of manifest error. Where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous. Id. at 844. We have approved of the disciplinary board’s application of the manifest error standard to the findings of the hearing committee. In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
However, this court has original jurisdiction over all bar disciplinary matters. La. Const. Art. V, § 5(B). Consequently, this court conducts an independent review of the evidence that determines whether the alleged misconduct has been proven by clear and convincing evidence. Supreme Court Rule XIX, § 11(G); In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343. Therefore, we now review the record to determine whether the ODC produced clear and convincing evidence supporting the dismissed charges.
In the Smith matter, the hearing committee dismissed the charges relating to | ^respondent’s neglect of Mr. Smith’s case and his failure to expedite the proceedings. The ODC contends it established that respondent failed to conduct an adequate investigation into the matter. However, the record reveals that respondent testified he conducted some investigation into the accident, interviewing the driver of the van, determining the insurance coverage of the other driver and obtaining Mr. Smith’s medical records. Respondent testified that the case was economically unfeasible since, if he pursued the litigation, he would have been required to expend his own funds for the costs, which he probably could *1268 not have recovered from Mr. Smith. Under these circumstances, we cannot say respondent’s investigation of Mr. Smith’s case was so deficient as to rise to the level of ethical misconduct.
The ODC next argues that it proved respondent failed to cooperate in its investigation of the Hariston matter. Our review of the record reveals that while .respondent did not file a timely answer to the ODC’s initial request, he ultimately responded and sought additional time to answer the allegations in more detail. During this time, we find respondent was undergoing severe personal problems which impacted his ability to focus on the disciplinary matter. Under these circumstances, we do not believe respondent’s actions rise to the level of an ethical violation.
In the Strange/Williams matter, the ODC contends it established that respondent failed to properly pursue Mr. Williams’ appeal, failed to properly communicate with Mr. Williams and Ms. Strange, and failed to cooperate in the investigation. Respondent’s testimony, which the hearing committee found to be credible, establishes that he found Mr. Williams’ appeal to be without merit and communicated this fact to Mr. Williams. While respondent admitted to “ignoring” calls from Ms. Strange, the evidence establishes that no attorney-client relationship existed between respondent and Ms. Strange, only between respondent and Mr. Williams. Finally, although respondent did not timely reply to Ms. Strange’s 1 mcomplaint, he ultimately filed a response. We conclude the ODC failed to prove any professional violations in this matter by clear and convincing evidence.
Finally, the ODC contends it proved respondent neglected Mr. Cheat-wood’s legal matter. Respondent testified that shortly after taking the case, he sent Mr. Cheatwood a letter dated December 28, 1994 indicating that he was withdrawing from further representation because he felt Mr. Cheatwood’s case was without merit. While Mr. Cheatwood denies receiving this letter, the ODC concedes respondent did not fabricate the letter.[5] We recognize that the evidence is in conflict on this charge, but we conclude the ODC did not prove by clear and convincing evidence that respondent neglected Mr. Cheat-wood’s case. Likewise, we find that respondent did not fail to cooperate with the ODC’s investigation.
Having found the hearing committee and disciplinary board properly dismissed part of the charges in the Smith matter, and the entire charges in the Hari-ston matter, Strange/Williams matter and Cheatwood matter, we now turn to respondent’s contention that the sanction recommended for the charges which were proven (the Lutke matter and part of the Smith matter) is excessive. In making a determination of the appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in vio *1269 lations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
In the Lutke matter, respondent admits he failed to appear at two depositions, causing inconvenience and expense to the ODC. In the Smith matter, respondent admits that he failed to adequately communicate with his client and inform him that he no longer intended to pursue the personal injury suit due to the economic infeasibility. This failure harmed the client, since it hampered his ability to obtain new representation. Additionally, respondent admits he failed to fully cooperate in this matter.
Under similar facts, this court has imposed sanctions ranging from one year and one day to three months. See, e.g., In re: Bergeron, 00-1386 (La.9/15/00), 768 So.2d 595 (one year and one day suspension imposed on an attorney for neglect of a legal matter, failure to communicate and failure to cooperate stemming from a nervous breakdown); In re: Colwart, 98-2303 (La.11/6/98), 721 So.2d 848 (six month suspension imposed on an attorney with a prior disciplinary record who failed to communicate with a client, failed to return unearned fees for one year and failed to cooperate with the ODC). The proposed sanction of an eight month suspension, with five months deferred, followed by a six month probationary period, is within this range of the cases, and is appropriate under the facts, especially considering the absence of any aggravating factors and respondent’s láck of a prior disciplinary record.
Accordingly, we will adopt the recommendation of the disciplinary board and impose an eight month suspension, with five months deferred, subject to a six month period of probation. .
|, ¡.DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is the decision of the court that respondent, Daniel R. Keele, be suspended from the practice of law for a period of eight months, with five months deferred, subject to a six month period of supervised probation. Respondent is further ordered to refund any fees paid to him by Ms. Strange. All costs and expenses of these proceedings are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest commencing thirty days from the date from the finality of the court’s judgment until paid.

. The underlying complaint involved allegations that respondent neglected Mr. Lutke's legal matter, failed to account for and refund unearned fees, and commingled and converted funds. The ODC later filed formal charges based on these allegations. Following the formal hearing, the hearing committee dismissed the count for insufficient evidence. In its brief to the disciplinary board, the ODC conceded that it failed to sustain its burden regarding the matter. Therefore, these allegations (which formed the basis for count I of the instant formal charges) are not before the court and will not be addressed in this opinion.

. Respondent had represented Mr. Smith in the earlier criminal proceeding which gave rise to the incarceration.

. There seems to be some question as to whether respondent even received the subpoena since there is no proof in the record the subpoena had been served.

. Respondent’s contract of employment with Mr. Smith provided that, if respondent determined that it was not feasible to prosecute his client’s claim, respondent could withdraw from representing Mr. Smith "upon notification of such fact.”

. Much of the ODC's argument in this regard focused on the fact that respondent sent the letter by ordinary mail, not certified mail. While the failure to send such a letter by certified mail may have malpractice implications, we cannot say it rises to the level of an ethical violation.