JjPER CURIAM.*
This disciplinary proceeding arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Hal J. Scott, an attorney licensed to practice law in Louisiana, but currently on interim suspension.
UNDERLYING FACTS
In late 1980, James R. King, an employee of the Louisiana Department of Elections and Registration (“Department”), approached respondent to bid on drayage (trucking) contracts awarded by the Department to transport voting machines to and from voting sites. Although Mr. King was prohibited from bidding on such contracts as an employee of the Department,[1] he and respondent confected an arrangement whereby respondent would bid on the drayage contract with the Department in his own name, but all services under the contract would be performed by Mr. King, even though the contracts specifically prohibited assignment of the contract to any third party without the written permission of the Department. Respondent received Inpayments for the contractual services, deposited the money in his client trust account, and wrote checks to Mr. King for the same amount. Respondent did not receive anything of value for his participation in the scheme.
The arrangement between respondent and Mr. King continued from late 1980 until March 17, 1999, when the Louisiana Office of Legislative Auditor’s report on the Department was released and exposed the scheme.[2] Three months later, on June 16, 1999, respondent was arrested and charged with one count of conspiracy to file or maintain false public records, violations of La. R.S. 14:26 and 14:133. On the same day, respondent pleaded guilty to the felony charge set out in the bill of information. He was subsequently sentenced to a *139 deferred one-year sentence, subject to a period of active supervised probation with imposition of fines and restrictions.[3]
Shortly after his conviction and sentencing, respondent and the ODC filed a joint motion with this court seeking to place respondent on interim suspension. This court granted the motion and placed respondent on interim suspension. In re: Scott, 99-2010 (La.9/3/99), 740 So.2d 103.
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed one count of formal charges against respondent, alleging that his conviction constituted the commission of a serious crime for purposes of Rule 8.4 of the Rules of Professional Conduct. Respondent ^subsequently answered the formal charges conceding he engaged in the misconduct, but asserted there were several applicable mitigating circumstances, including lack of financial benefit to him, lack of financial harm to the State of Louisiana, lack of selfish motive, cooperation and remorse. Respondent also pointed out the offense did not arise out of the practice of law and did not cause harm to any clients.

Formal Hearing

At a formal hearing, the ODC called no witnesses, but introduced the record of respondent’s underlying criminal conviction, including the bill of information, the affidavit and audit report submitted by the legislative auditor in support of the arrest warrant, respondent’s guilty plea and the plea and cooperation agreement entered into between respondent and the district attorney’s office. Numerous other public officials and attorneys submitted written letters attesting to respondent’s character and competence.
Respondent testified on his own behalf. He stated that he knew Mr. King had a contract with the Department to store the voting machines when they were not used, and that he believed Mr. King needed him to bid on the drayage contracts because Mr. King could not do both. He further testified former Commissioner of Elections Jerry Fowler and other Department officials were the ones who actually suggested the illegal bidding scheme. Respondent stated that when he agreed to participate in the scheme to assist his friend, he had a feeling it was illegal. Therefore, he discussed the matter with Commissioner Fowler, who advised respondent not to worry because that was the way things were being done around the state.[4]
LAs to his active participation in the scheme, respondent testified Mr. King would personally deliver blank bid sheets for respondent’s signature on a periodic basis and Mr. King would subsequently fill them out and submit them for consideration. Respondent stated the Department employees involved in the bidding process were aware that respondent’s name was being used by Mr. King because they always dealt with Mr. King regarding the details of respondent’s drayage contracts. Respondent claimed that, to the best of his knowledge, Mr. King was always awarded the bid contracts in their twenty-year relationship, and thus implied there was some bid rigging taking place within the Department. Respondent admitted that he fun *140 neled the money through his client trust account. However, he stated he had not practiced law since 1979 because he had to run his family’s 2,000 acre farm. Respondent maintained placing the funds in his client trust account was the easiest way to keep Mr. King’s funds segregated from his own. Respondent urged the court to consider a lenient sanction which would permit him to return to the practice of law. He stated that due to dire economic farming times, he had to sell his family’s farm, his two daughters’ homes, all of his immovable properties and farm equipment.

Hearing Committee Recommendation

The committee determined respondent violated Rule 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) of the Rules of Professional Conduct.[5] Relying on the ABA’s Standards for Imposing Lawyer Sanctions, it concluded the baseline sanction was disbarment. However, it recognized this court has departed downward from disbarment when there is appropriate | ¿mitigating evidence. In support, it cited jurisprudence where this court imposed thirty to thirty-six month suspensions for conduct constituting a “serious crime,” after considering mitigating factors related to the attorney’s cooperation with law enforcement authorities and willingness to plead guilty to the criminal offenses.[6] The committee concluded respondent violated a duty to the legal system and profession, resulting in great injury to the public and legal profession. It further noted:
Respondent knowingly and intentionally compromised his oath to the legal profession and allowed himself to be a facilitator in conspiring to circumvent State laws. Issues of trustworthiness and honesty are day to day concerns which must be strictly adhered to by attorneys in order to safeguard the integrity of the legal profession. Respondent’s conduct injures the public in that it has irrevocably shaken the public’s confidence in the State’s election process and its officials.
As mitigating factors, the committee recognized respondent’s remorse, cooperation in the criminal proceedings, and good character and reputation. In aggravation, the committee considered the fact the misconduct continued for nineteen years.
Based on these factors, the committee concluded respondent’s misconduct warranted a thirty-six month suspension from the practice of law, retroactive to the date of his interim suspension.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
| ¿Disciplinary Board Recommendation
The disciplinary board concurred in the factual findings of the committee.[7] It *141 found respondent knowingly and intentionally violated a duty owed to the public and as a professional, resulting in substantial injury to the public and legal profession.[8]
The board recognized several mitigating factors: remorse, absence of prior discipline, full and free disclosure and cooperation, good reputation, imposition of other penalties and sanctions, and absence of selfish motive. In aggravation, the board cited pattern of misconduct, substantial experience in the practice of law, and multiple offenses.
Relying on the jurisprudence cited by the committee, coupled with the numerous mitigating factors, the board recommended adoption of the proposed sanction of a thirty-six month suspension, retroactive to the date of respondent’s interim suspension.
Neither respondent nor the ODC filed an objection in this court to the disciplinary board’s recommendation. However, pursuant to Supreme Court Rule XIX, § 11(G)(1)(a), the court, on its own motion, docketed the matter for briefing and argument.
^DISCUSSION
It is well settled that when an attorney has been convicted of a crime, the sole issue to be decided in a subsequent disciplinary proceeding is whether the crime warrants discipline and, if so, the extent thereof. Supreme Court Rule XIX, § 19(E). While the court may consider the circumstances of the offense, as well as any aggravating and mitigating circumstances, in determining the extent to which the crime warrants discipline, a respondent may not argue facts which are inconsistent with the essential elements of the crime of which he was convicted. Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). Simply put, a respondent cannot seek to try again the issue of guilt after he has been convicted. Louisiana State Bar Ass’n v. O’Halloran, 412 So.2d 523 (La.1982).
In the instant case, respondent was convicted of the crime of conspiracy to file or maintain false public records, in violation of La. R.S. 14:26 and 14:133. The crime is a felony under state law and is a serious crime that involves fraud and misrepresentation. Respondent’s guilty plea is conclusive evidence of a violation of those statutes for the purpose of these disciplinary proceedings.
In making a determination of the appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990). The discipline to be imposed depends upon the facts of each ease and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Is As noted by the hearing committee, respondent’s actions have resulted in great *142 injury to the legal profession and the public. While respondent’s misconduct does not involve the breach of any duties to clients, nor did it cause any specific damage to clients, his knowing participation for nearly twenty years in a fraudulent bidding scheme serves to undermine the public’s confidence in the legal profession.
As aggravating factors, we recognize a pattern of misconduct, substantial experience in the practice of law (admitted 1972), and multiple offenses. However, the record reveals the existence of several significant mitigating factors, including respondent’s lack of a prior disciplinary record, his good character and reputation, his full and free disclosure to the legislative auditor’s office, district attorney’s office and to the disciplinary authorities, imposition of other penalties and sanctions, and remorse. Under these circumstances, we conclude the sanction recommended by the disciplinary board is appropriate under the facts. Accordingly, we will suspend respondent from the practice of law for a period of thirty-six months, retroactive to the date of his interim suspension.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs and oral argument, it is ordered that Hal J. Scott be suspended from the practice of law in Louisiana for a period of thirty-six months, retroactive to September 3, 1999, the date of his interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of the finality of this court’s judgment until paid.

 Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.

. The record indicates that Mr. King was originally employed by the Department from 1964 to 1985. He was rehired as a part-time warehouse mechanic, but apparently did not provide any services to the Department. Respondent later testified he was unaware Mr. King was on the Department’s employee payroll. He simply believed Mr. King was barred from participating in the drayage bidding because he also had a storage contract with the Department. In any event, respondent later learned, after a criminal investigation was instituted, that it was improper pursuant to the Department's internal regulations for Mr. King to have any contract with the Department.

. The auditor’s report indicates that, from 1991 to 1998, the Department paid respondent $284,998 under the drayage contracts. It is unclear how much respondent received on behalf of Mr. King from the Department for the remaining years. Further, it notes Mr. King received $123,269 through the illegal scheme with respondent just from 1995 to 1998. The report states that although Mr. King participated in the contract before 1995 (i.e., 1980 to 1994), records were not provided to determine the amount he received.

. On August 22, 2000, after respondent successfully completed the terms of his probation, his conviction was set aside in accordance with La. Code Crim. P. art. 893(D)(2).

. While Mr. King was friends with Commissioner Fowler, respondent was not. It was Mr. King who instigated the telephone discussions between respondent and Commissioner Fowler.

. The committee’s report states that Rule 8.4(b) (commission of a criminal act adversely reflecting on a lawyer's honesty, trustworthiness, or fitness as a lawyer) is the alleged rule violated. Yet, it found a violation of Rule 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), and made no finding with regard to Rule 8.4(b).

. The committee cited In re: Vaughn, 95-0810 (La.9/25/95), 660 So.2d 1202 (attorney convicted of mail fraud suspended for thirty-six months after consideration of numerous mitigating factors), and In re: O'Neill, 612 So.2d 738 (La.1993) (attorney convicted of participation in insurance and bank fraud schemes was suspended for thirty months after consideration of numerous mitigating factors).

.The board observed the committee’s report was confusing because it stated respondent was charged with Rule 8.4(b), but went on to find respondent violated Rule 8.4(c). The board concluded respondent had in fact violated Rules 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involv *141 ing deceit, dishonesty, fraud, or misrepresentation).

. In a footnote, the board noted that, while the ODC was unable to establish a financial harm suffered by the State, the ODC nonetheless submitted the fact "the public confidence in the Department of Elections has been irrevocably shaken. [Respondent’s] scheme extended for nearly two decades and helped to further injure and damage the confidence and faith by the people of this State in their elected officials."